| | |
|---|---|
| ISRAEL BORNSTEIN, as ADMINISTRATOR OF THE ESTATE OF AMIT BORNSTEIN and ISRAEL BORNSTEIN, individually<br>     Plaintiffs, | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br><br>CASE NUMBER:3:11-CV-05336-PGS-DEA |
| v. | CIVIL ACTION |
| COUNTY OF MONMOUTH, MONMOUTH COUNTY SHERIFF'S OFFICE, MONMOUTH COUNTY CORRECTIONAL INSTITUTION, LT. THOMAS BOLLARO, SGT. KENNETH NOLAND, OFC. TRACEY TIFT, OFC. THOMAS RICCHIUTI, OFC. TIMOTHY HUDDY, OFC. DANIEL HANSSON, OFC. RAYMOND PAUL, OFC. RICK LOMBARDO, OFC. STEVEN YOUNG, OFC. GEORGE THEIS, OFC. DONALD BENNETT, OFC. CHRISTOPHER PINEY, OFC. BERNARD FISHER, OFC SARA M. STURT, OFC. JAMIELYN ROOSBACK, OFC. LEO HAFNER, OFC. DAVID MILLARD; SGT. RICHARD VILACOBA; and JOHN DOES 1-10, and CORRECT CARE SOLUTIONS LLC<br>     Defendants. | HEARING DATE: October 6, 2014 |

---

**BRIEF IN SUPPORT OF THE MONMOUTH COUNTY DEFENDANTS' APPEAL OF THE MAGISTRATE'S AUGUST 27, 2014 ORDER MADE PURSUANT TO L.CIV.R 72.1(c)(1)(A)**

---

Gluck Walrath LLP
428 River View Plaza
Trenton, NJ  08611
Tel. (609) 278-1900
Attorneys for Monmouth County Defendants

Of Counsel:
Andrew Bayer

On the Brief:
Andrew Bayer
Brett Halpern

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................... ii, iii

PRELIMINARY STATEMENT ........................................... 1

STATEMENT OF FACTUAL AND PROCEDURAL HISTORY .................... 3

LEGAL ARGUMENT ................................................ 7

POINT I

THE MAGISTRATE'S RULING ON THE MONMOUTH COUNTY DEFENDANTS'
MOTION TO SEAL THE VIDEO SECURITY FOOTAGE WAS CLEARLY ERRONEOUS
AND CONTRARY TO LAW ........................................... 7

I. L.Civ.R. 72.1(c)(1)(A) Generally ....................... 7

II. L.Civ.R. 5.3(c) Generally ............................ 9

III. The Magistrate's Opinion is clearly erroneous and
contrary to law so as to warrant reversal of the
Magistrate's ruling on the instant motion to seal ....... 11

1. The Monmouth County Defendants have established a
legitimate public interest which warrants the relief
sought ................................................ 11

2. The Monmouth County Defendants have adequately
described a serious and clearly defined injury that
would result if the Motion to seal was denied ........... 14

3. The Monmouth County Defendants have demonstrated
that there are no less restrictive alternatives to
sealing the video security footage ...................... 20

CONCLUSION .................................................. 21

# TABLE OF AUTHORITIES

## Cases

Boban v. CSA Czech Airlines, 222 F. Supp. 2d 598 (D.N.J. 2002),
aff'd 93 Fed. Appx. 406 (3d Cir. 2004) ......................... 8

Doc v. Hartford Life & Acc. Ins. Co., 237 F.R.D. 545 (D.N.J.
2006) ........................................................ 7

Dome Petroleum Ltd. v. Employers Mutual Liab. Ins. Co., 131
F.R.D. 63 (D.N.J. 1990) ...................................... 8

Eisai Co. v. Teva Pharmaceuticals, 629 F. Supp. 2d 416 (D.N.J.
2009) ..................................................... 7, 8

Gunter v. Ridgewood Energy Corp., 32 F. Supp. 2d 162 (D.N.J.
1998) ........................................................ 8

Johnson v. Sullivan, 2009 U.S. Dist. LEXIS 67398 (D.N.J. Jul.
29, 2009) ........................................... 10, 16, 17

Leucadia v. Applied Extrusion Tech, Inc., 998 F.2d 157 (3d Cir.
1993) ........................................................ 9

Levine v. Voorhees Bd. of Education, 2009 U.S. Dist. LEXIS
119263 (D.N.J. Dec. 23, 2009) ............................... 10

Newman v. GMC, 2008 U.S. Dist. LEXIS 105492 (D.N.J. Dec. 31,
2008) ........................................................ 7

O'Brien v. BioBancUSA, 2010 U.S. Dist. LEXIS 72599 (D.N.J. Jul.
19, 2010) ................................................... 10

Pansy v. Borough of Stroudsburg, 23 F.3d 772 (3d Cir. 1994) ... 10

Schatz-Bernstein v. Keystone Food Prods., 2009 U.S. Dist LEXIS
347000 (D.N.J. Apr. 17, 2009) ................................ 9

Sebastian International Inc. v. Consumer Contract (PTY) Ltd.,
1988 U.S. Dist. LEXIS 3462 (D.N.J. Mar. 11, 1988) .......... 8, 9

Securimetrics, Inc. v. Iridian Techs., 2006 U.S. Dist. LEXIS
2297 (D.N.J. Mar. 30, 2006) ...................... 9, 10, 14, 15

Skinner v. Ashan, 2007 WL 708972 (D.N.J. Mar. 2, 2007) ........ 9

Travelers Indemn. Co. v. Dammann & Co., 592 F. Supp. 2d 752
(D.N.J. 2008), aff'd 594 F.3d 238 (3d Cir. 2010) ............... 7

Wortman v. Beglin, 2007 U.S. Dist. LEXIS 60163 (D.N.J. Aug. 16,
2007) ................................................................. 8

Wyeth v. Abbott Labs, 2010 U.S. Dist. LEXIS 76569 (D.N.J. Jul.
29, 2010) ............................................................ 10

Yanick v. Temple Univ. Health Sys., 297 Fed. Appx. 111, 115 (3d
Cir. 2008) ...................................................... 14, 15

### STATUTES

42 U.S.C. §1983 ..................................................... 1

28 U.S.C. §636(b)(1)(B) ............................................. 8

### RULES

L.Civ.R. 5.3(c) ............................................... 2, 9, 14

L.Civ.R. 5.3(c)(2) ............................................. 9, 16

L.Civ.R. 7.1 ........................................................ 3

L.Civ.R. 72.1(c)(1)(A) ....................................... 2, 3, 8

### REGULATIONS

N.J.A.C. 10A:22-2.3(a)(5) .......................................... 11

**PRELIMINARY STATEMENT**

The instant litigation arises from the death of Amit Bornstein ("Bornstein") while confined to the Monmouth County Correctional Institution ("MCCI" or the "Institution") on July 29, 2010.   Plaintiff Israel Bornstein ("Plaintiff") as the administrator to Amit Bornstein's estate and in his individual capacity have filed a six count complaint, alleging, among other causes of action, several theories of civil rights liability concerning 42 U.S.C. §1983 against twenty (20) defendants from Monmouth County (collectively referred to as the "Monmouth County Defendants") consisting of three (3) entities and seventeen (17) public employees that perform various correctional duties at MCCI.   MCCI is a state-of-the-art correctional institution, accredited by both the New Jersey Department of Corrections and the American Correctional Association and Commission on Accreditation, which incarcerates approximately 1,300 inmates.

As part of the pre-trial motion practice, the Monmouth County Defendants filed a motion for summary judgment.   Within its opposition to the Monmouth County Defendants' motion for summary judgment, Plaintiffs submitted to the Court a copy of security footage depicting Bornstein's time at MCCI, which lies at the heart of the litigation.   This video security footage had

previously been produced in discovery by the Monmouth County Defendants pursuant to a court-approved protective order.

After seeking a temporary seal, the Monmouth County Defendants filed a Motion to Seal the video security footage. By Order dated August 27, 2014, the motion was denied by the Hon. Douglas E. Arpert, U.S.M.J. A review of the Magistrate's opinion reveals that the Magistrate's decision was clearly erroneous and contrary to law, as the decision creates an overly onerous and unrealistic burden on correctional institutions to simulate harms to correctional staff, inmates and/or the public at large should the security video footage depicting restricted-access areas of the jail and officer response patterns to unruly inmates be disseminated to the public. As such, this Court should reverse the Magistrate's decision and enter an order sealing the MCCI's video security footage

## STATEMENT OF FACTUAL AND PROCEDURAL HISTORY

On July 29, 2010 Monmouth County Sheriffs' Officers apprehended Bornstein pursuant to an executed warrant. Bornstein was taken to the MCCI where he began undergoing the institution's booking process. During this time, Bornstein became extremely unruly posing a threat to institutional security and an altercation ensued between Bornstein and several officers in which the officers employed force to restrain Bornstein.

After this initial use of force occurred within MCCI's booking area, Bornstein was taken to the nurse's station and later escorted to the institution's medical section. Bornstein was ultimately ordered by the medical staff to be placed in a constant watch cell within MCCI's constant watch area. While officers were attempting to disrobe Bornstein in order to place him in a suicide smock, Bornstein once again became extremely unruly and another use of force ensued. Bornstein was then placed in a restraint chair within the constant watch cell.

After roughly thirty (30) minutes, Bornstein was found to have a shallow heart beat and losing consciousness. Bornstein was removed from the restraint chair, and CPR was performed. Paramedics then arrived at the institution and transported Bornstein to CentraState Hospital in Freehold, New Jersey, where Bornstein was pronounced dead shortly after arrival.

3

At all relevant times, security cameras previously installed throughout MCCI recorded the actions taken by both Bornstein and the various individual Monmouth County Defendants. These security cameras are in place to ensure that MCCI is operating in a secure and orderly fashion. <u>See</u> Cert. Andrew Bayer at Ex. A at ¶ 3. The security footage recorded from July 29, 2010 depicts the uses of force which occurred in both the booking and constant watch areas of MCCI. <u>Id.</u> at ¶ 4. Moreover, the footage depicts MCCI's standard correctional officer response protocol involving uses of force. <u>Id.</u> at ¶ 6.

Both the booking and constant watch areas are restricted access areas. <u>Id.</u> at ¶ 5. As a restricted area, neither inmates within MCCI, nor members of the public can gain access or freely visit these areas within the Institution. <u>Id.</u>

Plaintiff filed an amended seven-count complaint to which the Monmouth County Defendants filed a corresponding answer. As part of the discovery process, the named parties entered into a Discovery Confidentiality Order on January 30, 2012. This Order was signed by the Hon. Douglas E. Arpert, U.S.M.J. Pursuant to this Order, the Monmouth County Defendants produced copies of the above-described security footage.

The Monmouth County Defendants filed a motion for summary judgment on November 13, 2013. Plaintiff filed an opposition to the Monmouth County Defendants' motion for summary judgment on

January 7, 2014.   As part of Plaintiff's opposition, Plaintiff submitted to the Court two exhibits, H and I, which were copies of the security footage depicting Bornstein's confinement at the MCCI on July 29, 2010.

The Monmouth County Defendants were advised that the New York Post was seeking to obtain copies of the MCCI security footage.   In response, the Monmouth County Defendants requested that a temporary seal be placed on these exhibits pending formal motion.   This request was granted by the Court on May 14, 2014.

The Monmouth County Defendants then filed the underlying Motion to Seal Exhibits H and I of Plaintiff's opposition to the Monmouth County Defendants' motion for summary judgment.   On August 27, 2014, the Magistrate denied the Monmouth County Defendants' Motion to Seal.   <u>See</u> <u>Id.</u> at Ex. C.   In reaching this decision, the Magistrate found that the Monmouth County Defendants failed to satisfy their burden in:  (1) demonstrating a legitimate public interest in restricting public access to the video security footage; (2) adequately describe a serious and clearly defined injury that would result if the Motion to seal was denied; and (3) demonstrate that no less restrictive alternative exists as opposed to restricting public access to the video security footage.   <u>Id.</u>   The Magistrate's Order, and more specifically these conclusions are clearly erroneous and contrary to law, as the Monmouth County Defendants amply met

their burden in satisfying all four prongs of L.Civ.R. 5.3(c).
As such, the Monmouth County Defendants, pursuant to L.Civ.R.
72.1(c)(1)(A) now move seeking a reversal of the Magistrate's
August 27, 2014 order denying the Motion to Seal.

## LEGAL ARGUMENT

**THE MAGISTRATE'S RULING ON THE MONMOUTH
COUNTY DEFENDANTS' MOTION TO SEAL THE VIDEO
SECURITY FOOTAGE WAS CLEARLY ERRONEOUS AND
CONTRARY TO LAW**

## I.    L.CIV.R. 72.1(c)(1)(A) Generally

L. Civ. R. 72.(1)(c)(1)(A) states in pertinent part:

> Any party may appeal from a Magistrate
> Judge's determination of a non-dispositive
> matter within 14 days after the party has
> been served with a copy of the Magistrate
> Judge's order . . . Such party shall file
> with the Clerk and serve on all parties a
> written notice of appeal which shall
> specifically designate the order or part
> thereof appealed from and the basis for
> objection thereto. The notice of appeal
> shall be submitted for filing in the form a
> notice of motion conforming with the
> requirements of L.Civ.R. 7.1 . . . A judge
> shall consider the appeal and/or cross-
> appeal and set aside any portion of the
> Magistrate Judge's order found to be clearly
> erroneous or contrary to law.

The burden of showing that a ruling is "clearly erroneous
or contrary to law" rests with the party filing the appeal.
Newman v. GMC, 2008 U.S. Dist. LEXIS 105492 (D.N.J. Dec. 31,
2008); see also Travelers Indemn. Co. v. Dammann & Co., 592 F.
Supp. 2d 752, 758-59 (D.N.J. 2008), aff'd 594 F.3d 238 (3d Cir.
2010).  It has been established that "a magistrate's legal
conclusions on a non-dispositive motion will be reviewed de
novo." Doc v. Hartford Life & Acc. Ins. Co., 237 F.R.D. 545,
548 (D.N.J. 2006); see also Eisai Co. v. Teva Pharmaceuticals,

629 F. Supp. 2d 416, 424 (D.N.J. 2009). "A finding is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Boban v. CSA Czech Airlines, 222 F. Supp. 2d 598, 601 (D.N.J. 2002), aff'd 93 Fed. Appx. 406 (3d Cir. 2004) (quoting Dome Petroleum Ltd. v. Employers Mutual Liab. Ins. Co., 131 F.R.D. 63, 65 (D.N.J. 1990) (internal quotations omitted)).

Additionally, "[a] ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law." Id. (quoting Gunter v. Ridgewood Energy Corp., 32 F. Supp. 2d 162, 164 (D.N.J. 1998)). Further, the "contrary to law" prong of the L.Civ.R. 72.1(c)(1)(A) standard requires the reviewing court to accept the conclusions of the Magistrate Judge as the fact finder unless that determination "either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." Wortman v. Beglin, 2007 U.S. Dist. LEXIS 60163 (D.N.J. Aug. 16, 2007). It is important to note that conceptually, the "clearly erroneous or contrary to law" standard of review is to be distinguished "from the more stringent de novo review accorded proposed findings and recommendations under [28 U.S.C.] §636(b)(1)(B)." Sebastian

International Inc. v. Consumer Contract (PTY) Ltd., 1988 U.S.
Dist. LEXIS 3462 (D.N.J. Mar. 11, 1988).

## II.  **L.Civ.R. 5.3(c) Generally**

L.Civ.R. 5.3(c)(2) states in pertinent part:

> Any motion to seal or otherwise restrict
> public access shall be available of review
> by the public.  The motion papers shall
> describe (a) the nature of the materials or
> proceedings at issue, (b) the legitimate
> private or public interests which warrant
> the relief sought, (c) the clearly defined
> and serious injury that would result if the
> relief sought is not granted, and (d) why a
> less restrictive alternative to the relief
> sought is not available.

> [See also Schatz-Bernstein v. Keystone Food
> Prods., 2009 U.S. Dist LEXIS 347000 (D.N.J.
> Apr. 17, 2009).]

It has been stated that "where a party moves to seal
pretrial motions of a 'nondiscovery nature' such as a motion for
summary judgment, the moving party must make a showing
sufficient to overcome a 'presumptive right of public access.'"
Skinner v. Ashan, 2007 WL 708972 (D.N.J. Mar. 2, 2007) (citing
Leucadia v. Applied Extrusion Tech, Inc., 998 F.2d 157, 164 (3d
Cir. 1993)).  A moving party "can rebut this presumption by
demonstrating that 'good cause' exists for the protection of the
material the party is seeking to seal."  Id.  "Good cause exists
when a party makes a particularized showing that disclosure will
cause a 'clearly defined and serious injury to the party seeking
closure."  Securimetrics, Inc. v. Iridian Techs., 2006 U.S.

Dist. LEXIS 2297 (D.N.J. Mar. 30, 2006) (quoting <u>Pansy v.</u> <u>Borough of Stroudsburg</u>, 23 F.3d 772, 786 (3d Cir. 1994)).

Where the standard is clearly met, sealing orders are often granted by the District Court. <u>Wyeth v. Abbott Labs</u>, 2010 U.S. Dist. LEXIS 76569 (D.N.J. Jul. 29, 2010); <u>see</u> <u>also</u> <u>Levine v.</u> <u>Voorhees Bd. of Education</u>, 2009 U.S. Dist. LEXIS 119263 (D.N.J. Dec. 23, 2009). However, the District Court has made clear that merely stating that the standards of the rule are met without offering specific instances of interests of injuries is insufficient. <u>O'Brien v. BioBancUSA</u>, 2010 U.S. Dist. LEXIS 72599 (D.N.J. Jul. 19, 2010) ("Plaintiff has a duty to particularly explain his statement, and he has not done so. The general, cursory summary of the harms he supplied fails to satisfy the burden under Local Rule 5.3(c) and controlling precedent"); <u>see</u> <u>also</u> <u>Johnson v. Sullivan</u>, 2009 U.S. Dist. LEXIS 67398 (D.N.J. Jul. 29, 2009) (denying motion where defendant said release of materials could compromise institutional staff and security but were "silent as to what information . . . is 'confidential' or how its disclosure could impact institutional security").

III. **The Magistrate's Opinion is clearly erroneous and contrary to law so as to warrant reversal of the Magistrate's ruling on the instant motion to seal**

1. **The Monmouth County Defendants have established a legitimate public interest which warrants the relief sought.**

The legitimate public interest underlying the Monmouth County Defendants' motion is the need to promote institutional security. Institutional security protects: (1) the inmates confined to the institution; (2) correctional officers at the institution; (3) third-party employees such as medical staff; and (4) the public. In order to effectuate the promotion of institutional security, MCCI maintains a vast network of security cameras. These cameras, positioned all throughout the institution, allow for MCCI officers to identify any potential security problems so that may respond to potential problems in an expeditious fashion so as to avoid potential escalation.

The New Jersey Department of Corrections, in establishing a regulatory framework to govern all correctional facilities, has recognized the legitimate public interest in maintaining institutional security. See N.J.A.C. 10A:22-2.3(a)(5). This regulatory provision deems confidential any "report or record relating to an identified individual, which, if disclosed, would jeopardize the safety of any person or the safe and secure operation of the correctional facility or other designated place of confinement." Id.

From a more basic conceptual vantage point, one of the most basic principles structuring our society is the notion that those individuals that violate the law of the land are to be penalized and confined to a correctional facility to serve a designated sentence. This correctional system, established hundreds of years ago, was founded on the premise that those individuals that violate the laws of the land may be of danger to the public, and as such, shall be removed from society and required to serve a sentence of imprisonment. Correctional institutions such as MCCI are charged with housing these individuals, some of whom pose a threat to public safety. It certainly flows from this basic societal tenet that institutional security is an important public interest, so that the institution maintains order. Such order protects all those that are either confined to or work at the institution, as well as the public at large. A correctional institution that experiences inmate uprisings poses a grave danger to the inmates themselves, officers and staff within the facility, and the public at large should those inmates escape.

In denying the Monmouth County Defendants' Motion to Seal the video security footage, the Magistrate wrongly concludes that "Defendants have not demonstrated any 'legitimate or public or private interests which warrant the relief sought.'" <u>See</u> Cert. of Andrew Bayer at Ex. C at p. 3. However, the next

12

sentence within the Magistrate's opinion comments that "[t]he Court, along with Intervenors[1], acknowledges that Defendants possess an important interest in maintaining the institutional security at MCCI." Id. It would appear clear that if a party possesses an "important" interest, this interest, the desire to maintain institutional security and protect various individuals physical well-being, is certainly "legitimate" as well. This internal inconsistency within the Magistrate's reasoning can only lead to the conclusion that the Magistrate's decision was clearly erroneous.

The remainder of the Magistrate's reasoning in concluding that the Monmouth County Defendants do not possess a legitimate public interest in maintaining institutional security is based upon the conclusion that "descriptions of the restricted areas shown in the footage are included in the Plaintiff's Brief, along with details describing prison guard response movements." Id. This flawed reasoning, which will additionally be addressed infra, has no bearing on the analysis of whether the Monmouth

---

[1] Both Intervenors CBS and ACLU-NJ acknowledged that the Monmouth County Defendants possess an interest in maintaining institutional security. See CBS' Brief in Opposition to Motion to Seal at p. 18 ("CBS recognizes that Defendants possess an important interest in maintaining the institutional security of the MCCI to protect the safety of its inmates, employees, and the public at large"), and ACLU-NJ's Brief in Opposition to Motion to Seal at p. 7 ("Amicus does not dispute that the County Defendants have a **legitimate** interest in maintaining the institutional security and safety of MCCI") (emphasis added).

County Defendants have established a legitimate public **interest**. Instead, the Court, the Intervenors, and the New Jersey Department of Corrections all concur that institutional security is an important interest.  As such, the Monmouth County Defendants have clearly satisfied the second factor in the L.Civ.R. 5.3(c) analysis governing a motion to seal.

> **2.  The Monmouth County Defendants have adequately described a serious and clearly defined injury that would result if the Motion to seal was denied.**

The Magistrate wrongly found that the Monmouth County Defendants failed to satisfy the third factor associated with the motion to seal analysis as they failed to adequately describe a serious and clearly defined injury that would result if the motion to seal were denied.  Id. at p. 4.  To support this conclusion, the Magistrate explained that "vague and speculative allegations . . . are insufficient to demonstrate the requisite injury and otherwise fail to show that the balance of relevant issues weigh in favor of confidentiality."  Id. (citing Yanick v. Temple Univ. Health Sys., 297 Fed. Appx. 111, 115 (3d Cir. 2008)).  Further the Magistrate concluded that the Monmouth County Defendants reliance upon Securimentrics, Inc. v. Iridian, Inc., 2006 U.S. Dist. LEXIS 22297 (D.N.J. Mar. 30, 2006) was misplaced.  Id.  Specifically, the Magistrate noted that a moving party must "'make a particularized showing of harm that would result' if the documents in question are publicly

14

accessible, rather than merely making 'generalized allegations of harm that *might* occur if all the exhibits at issue were revealed.'" Id. (emphasis in original).

In so finding, the Magistrate has fashioned a standard that will place any correctional institution seeking to hold evidence confidential to maintain institutional security in the unenviable and illogical position to have provide a blue-print for its own destruction.   Whereas Yanick and Securimetrics concern a private entity's interest in maintaining the confidentiality of documents, the at-issue evidence underlying this motion to seal, concerns the integrity of a penal facility's institutional security.   It is entirely reasonable to require a private entity to specifically detail how the release of certain information to the public will cause harm to their business.

Conversely, it is both illogical and unreasonable to require a correctional/penal institution to lay out a step-by-step assault plan as to how their own institution will be attacked in order to successfully meet the "clearly defined and serious harm" criteria.   Beyond the fact that providing such a plan in a document accessible to the public would literally be akin to handing the keys to the institution over to those seeking to destroy it, any individual armed with the information derived from viewing the video security footage could develop a

multitude of ways to wage an assault on MCCI. Surely the spirit and intent underlying L.Civ.R. 5.3(c)(2), applied to a correctional institution does not require a submission of the plan for its own downfall in order to restrict public access to various documents.

Instead, the judicial safeguard exists in the requirement that a correctional institution provide sufficiently articulated reasons in demonstrating that the release of various documents and/or evidence would result in a specific harm. This judicial safeguard against public entities attempting to seal documents in the interest of institutional security is clearly shown in Johnson v. Sullivan, 2009 U.S. Dist. LEXIS 67398 (D.N.J. Jul. 29, 2009). The Johnson decision, readily distinguishable from the instant motion to seal, demonstrates the Court's ability to safeguard against public entities that blindly attempt to restrict public access to any and all information without good cause. In Johnson, the defendants sought to seal two categories of documents: (1) excerpts of plaintiff's electronic medical files documenting his injuries and treatment; and (2) a "Special Investigations Division report". Id. at * 1. The Court explained that the Special Investigations Division report was comprised of "incident reports of correctional officers who witnessed the particular use of force" underlying the lawsuit. Id. at *3.

In filing their motion to seal, the Johnson defendants did not file a brief in support of said motion. Id. at *2. Instead, they submitted an Affidavit which stated that the Special Investigation Division report "contain[s] confidential information regarding the officers and Plaintiff and information that, if released to the Plaintiff and the public, could compromise the safety and security of the Department of Corrections and staff." Id.

While conducting its analysis, the Court noted that the defendants' submission was "silent as to what information in the Special Investigation Division report they believe[d] [was] 'confidential' or how its disclosure could impact institutional security." Id. at *3. As a result, the Court denied the defendants' motion to seal. Id. at *4.

As opposed to the moving party in Johnson, the Monmouth County Defendants have clearly articulated the reasons in which the release of the video security footage would compromise institutional security, the motion to seal said footage should be granted. Specifically, the public would have the ability to visually study areas of MCCI that, prior to the release of the security footage, were restricted access. See Cert. of Andrew Bayer at Ex. A at ¶ 5. Moreover, they would have the ability to visually study these restricted access areas for unlimited periods of time. Further, a person having the opportunity to

view the security footage would experience a far more expansive observation of MCCI than an inmate who is escorted into a particular area of MCCI for a moment of time. See Id. at Ex. B at ¶ ¶ 3, 6.

Specifically, the interface technology of the MCCI security cameras allows for one single viewer to view sixteen cameras at once. Id. at ¶ 3. These cameras depict different vantage points located throughout the MCCI. Id. Thus, the public dissemination of the video footage would enable a viewer to have access to correctional response patterns on an institution-wide basis. Id. at ¶ 4. Not only would a viewer have the opportunity to observe how correctional officers within the immediate vicinity of a disturbance would respond, but also how officers in an entirely separate portion of the institution would respond at the exact same time. Id.

In addition to the expansive nature upon which a viewer will have the opportunity to observe institution-wide officer response patterns, release of the security footage will allow a viewer the opportunity to study the security footage and evaluate whether there are any "blind spots" (i.e. any areas within the MCCI that are not covered by the security cameras). Id. at ¶ 5. Public dissemination of this video footage would enable any person to devote unlimited amounts of time in assessing whether any "blind sports" exist within MCCI. Id.

Returning to the Magistrate's observation that a description of both the physical layout of the at-issue restricted access areas and correctional officer response patterns are mentioned within Plaintiff's brief in opposition to the Monmouth County Defendants motion for summary judgment is of no significance. While there are cursory mentions of different rooms in Plaintiff's brief, the references do not provide the level of detail that a person would be able to extract from reviewing the security footage. As an example, Plaintiff's brief does not mention the location of the security cameras within each restricted access area. As such, reviewing Plaintiff's brief alone would not enable someone seeking to either plan an assault on MCCI or assist an inmate in escaping or causing a prison riot from detecting potential "blind spots" within the security camera network.

Thus it is evident that the Monmouth County Defendants have satisfied their burden of articulating sufficient reasons in demonstrating that the public dissemination of the video security footage would compromise institutional security by providing key information to individuals seeking to wage an assault on MCCI or assist in the planning of a prison escape or uprising.

19

### 3. The Monmouth County Defendants have demonstrated that there are no less restrictive alternatives to sealing the video security footage.

Within the Order denying the Monmouth County Defendants'' motion to seal, the Magistrate found that the Monmouth County Defendants had failed to demonstrate that there existed no less restrictive alternative to sealing the video security footage. Simply stated, there is no method by which one can manipulate the footage to remove any and all sensitive visual depictions. As such, the evidence remains in its present state as it allows any onlooker the ability to review sixteen (16) cameras, stationed throughout MCCI, simultaneously. Such far-reaching access, as detailed by Captain Sutton, provides any individual with an ability to observe correctional response patterns on an institution-wide basis. See Cert. of Andrew Bayer at Ex. A at ¶ 4. For this reason, the Monmouth County Defendants have sufficiently met their burden in establishing that there exists no less restrictive alternative than to seal the video security footage.

**CONCLUSION**

For the foregoing reasons, the Magistrate's ruling in denying the Monmouth County Defendants' motion to seal Exhibits H and I of Plaintiff's opposition to the Monmouth County Defendants' motion for summary judgment should be reversed and an Order sealing these exhibits entered.

**GluckWalrath LLP**
Attorneys for Monmouth County
Defendants


By: _/s/Andrew Bayer_____
    Andrew Bayer

Dated:  September 11, 2014