*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ISRAEL BORNSTEIN, | : | |
| | : | Civil Action No. 11-5336 (PGS) |
| Plaintiff, | : | |
| | : | |
| v. | : | OPINION |
| | : | |
| CNTY. OF MONMOUTH, et al., | : | |
| | : | |
| Defendants. | : | |

## SHERIDAN, U.S.D.J.

This matter comes before the Court on Defendants County of Monmouth, Monmouth County Sheriff's Office, Monmouth County Correctional Institution, Lt. Thomas Bollaro, Sgt. Kenneth Noland, Ofc. Tracey Tift, Ofc. Thomas Ricchiuti, Ofc. Timothy Huddy, Ofc. Daniel Hansson, Ofc. Raymond Paul, Ofc. Rick Lombardo, Ofc. Steven Young, Ofc. George Theis, Ofc. Donald Bennett, Ofc. Christopher Piney, Ofc. William Fancher, Ofc. Sara M. Sturt, Ofc. Jamielynn Roosbach, Ofc. Leo Hafner, Ofc. David Millard, and Sgt. Richard Vilacoba's (collectively referred to as the "County Defendants") Motion for Summary Judgment (ECF No. 66). The Court held oral argument in this matter on August 28, 2014. For the reasons set forth herein, the motions are denied in part and granted in part.

## I. BACKGROUND

The following facts are undisputed unless otherwise noted.[1]

---

[1] As discussed by the parties, Plaintiff failed to submit an opposing 56.1 Statement of Undisputed Material Facts. However, as held by the Third Circuit, "[p]ermitting the non-movant to rely on its briefing and evidentiary submissions to dispute the movant's 56.1 statement is consistent with the requirement at summary judgment that federal courts 'view the facts in the light most favorable to the non-moving party.'" *Boswell v. Eoon*, 452 F. App'x 107, 112 (3d Cir. 2011) (quoting *Jakimas v. Hoffmann–La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007)); *see also*

On July 9, 2010, the Hon. Anthony J. Mellaci, J.S.C. signed an order of bench warrant and bail forfeiture of decedent Amit Bornstein ("Mr. Bornstein"). (Defs.' General Statement of Undisputed Material Facts ("SUMF") ¶ 20, ECF No. 66-72.) The order indicated that the most serious charge alleged against Mr. Bornstein was the charge of criminal mischief – damage to property in violation of N.J.S.A. 2C:17-3A(1). (*Id.*)  On July 23, 2010, another warrant was issued for the arrest of Mr. Bornstein by order of Municipal Judge Spencer B. Robbins of Woodbridge, New Jersey. (*Id.* at ¶ 21.)  This warrant was issued for the offense of N.J.S.A. 2C:35-10A(4). (*Id.*)  On July 29, 2010, a third warrant was issued by order of Judge Scott J. Basen of Freehold Borough. (*Id.* at ¶ 22.)  The warrant was issued for Mr. Bornstein's failure to appear before the court in violation of N.J.S.A. 2A:10-1c. (*Id.*)  The warrant required Mr. Bornstein to be kept at the Monmouth County Correctional Institution until August 3, 2010 at 1:00 p.m. at which time Mr. Bornstein was to be brought before the Court. *Id.*

On July 29, 2010, Monmouth County Sherriff's Officers T. Mayer and L. Maxfield served the Superior Court warrant on Mr. Bornstein at his home in Marlboro, New Jersey. (*Id.* at ¶ 23.) The officers placed Mr. Bornstein in handcuffs and then transported him to the Monmouth County Correctional Institution ("MCCI"). (*Id.* at ¶¶ 25; 29.) At approximately 5:20 p.m. on July 29, 2010, Lieutenant Bollaro received a phone call from Mr. David Putz of the Red Bank, New Jersey office of the Division of Youth and Family Services. (*Id.* at ¶ 50.) Mr. Putz requested that a number be retrieved from Mr. Bornstein's cell phone in order to make arrangements for Mr. Bornstein's younger brother to be placed under the supervision of a family

---

*Longoria v. New Jersey*, 168 F.Supp.2d 308, 312 n. 1 (D.N.J. 2001) (noting that, because the non-movant had not submitted an opposing 56.1 statement, the movant's 56.1 factual statements would be deemed admitted "unless disputed by [the non-movant] in his briefs or contradicted by the evidence"). Therefore, unless disputed by Plaintiff in his brief or contradicted by the evidence, the Court will deem the County Defendants' facts admitted.

member. (*Id.*) Lieutenant Bollaro placed a phone call to the booking area and instructed Officer George Theis to retrieve Mr. Bornstein's father's phone number out of Mr. Bornstein's phone. (*Id.* at ¶ 51.) Officer Theis called Mr. Bornstein to come to the front desk and informed him that he needed to get his father's phone number out of his phone and explained that he would be opening Mr. Bornstein's property bag. (*Id.* at ¶ 52.) Officer Theis retrieved Mr. Bornstein's father's phone number. (*Id.* at ¶ 52.) Mr. Bornstein then wanted to use his phone and retrieve other numbers from it. (*Id.* at ¶ 54.) According to Officer Theis, he explained to Bornstein that he could not do that, which point Mr. Bornstein then reached over the front desk with a closed fist and said to Officer Theis, "suck my fucking cock". (*Id.*) Officer Theis claims that he informed Mr. Bornstein that he was going to be taken to Tank 8 in order to calm down, but Mr. Bornstein instead walked over to the nurse's station, at which point Officer Theis walked over to Bornstein and instructed him to stand up. (*Id.*) Defendants allege that Mr. Bornstein responded by saying, "don't fucking touch me". (*Id.*)

Both Officers Theis and Tracy Tift then began to escort Bornstein to Tank 8. (*Id.* at ¶ 55.) Officer Tift was directly behind Mr. Bornstein and was holding Mr. Bornstein's left bicep with his right hand as he was escorting him. (*Id.* ¶¶ 55-56.) As the three men passed through the first of two doors on their way to Tank 8, Mr. Bornstein spun to his right. (*Id.* at ¶ 57.) As he spun, Officer Tift states that Mr. Bornstein's hands were up in an aggressive manner, which Officer Tift perceived as a "fighting stance". (*Id.* at ¶ 58.) Officer Tift testified that he felt threatened and therefore, he struck Mr. Bornstein in the face. (*Id.* at ¶¶ 59; 61.) The officers testified that as they were trying to place Mr. Bornstein in Tank 8, Mr. Bornstein was resisting and Officer Theis went to bring Mr. Bornstein to the ground. (*Id.* at ¶ 64-65.) Officer Steven Young became involved in the altercation when Mr. Bornstein was in the process of being taken

to the ground. (*Id.* at ¶ 65.) As the officers and Mr. Bornstein went to the ground, Officers Timothy Huddy, Daniel Hansson, Raymond Paul, Thomas Ricchiuti, and Rick Lombardo responded to the scene to assist in subduing Mr. Bornstein. (*Id.*) The officers allege that Mr. Bornstein was resisting the officers by not giving his arms up to be handcuffed and instead was tucking them under his body. (*Id.* at ¶ 69.) They further allege that Mr. Bornstein was flailing his arms, kicking his legs and resisting control, while attempting to get to his feet. (*Id.* at ¶ 71.)

The officers allege that after they handcuffed Mr. Bornstein, he began to kick so Sergeant Noland ordered the officers to shackle him. (*Id.* at ¶ 74.) Also during the struggle, Officer Tift sprayed OC (i.e. pepper) spray in Mr. Bornstein's face. (*Id.* at ¶ 75.) Defendants allege that while Mr. Bornstein was on the ground, the officers did not punch, kick, or strike him. (*Id.* at ¶ 79.) Once Mr. Bornstein was secured, he was taken to the booking nurse to be screened. (*Id.* at ¶ 80.) Officer Paul placed a spit mask on Mr. Bornstein once they arrived at the nurse's station. (*Id.* at ¶ 81.) Upon reaching the nurse's station, Defendants state that Mr. Bornstein was wiggling out of the chair and falling to the ground and in response, Sergeant Noland instructed the officers to leave him on the ground. (*Id.* at ¶ 82.) Mr. Bornstein was then placed in a wheelchair and taken out of booking to the medical section, where he was examined by a nurse. (*Id.* at ¶ 86.) During the examination, the nurse telephoned the doctor who ordered a shot of Ativan be given to Mr. Bornstein. (*Id.* at ¶ 86.) Sarah Smentkowski (Lamm), at the time a Licensed Social Worker (LSW) employed by CCS, ordered Mr. Bornstein to be placed in the constant watch area. (*Id.* at ¶ 87.)

After the examination in the medical section was completed, Mr. Bornstein was escorted to the constant watch area which was thirty (30) feet away. (*Id.* at ¶ 89.) The officers wheeled Mr. Bornstein into the constant watch area and the officers laid him face down on his stomach

onto the mattress in the constant watch cell to remove the shackles and handcuffs. (*Id.* at ¶ 90.) Defendants allege that Mr. Bornstein began resisting and attempting to push up. (*Id.*) The officers testified that they attempted to keep Mr. Bornstein down on the bed so that he would not get up, but he continued to resist. (*Id.* ¶ 92.) Officer Rossbach passed handcuffs into the constant watch cell and it took all of the officers present in the constant watch cell to handcuff Mr. Bornstein. (*Id.* at ¶ 93.) The officers then placed him in a restraint chair.[2] (*Id.* at ¶ 94.) According to the officers, when they left Mr. Bornstein in the constant watch cell, he was fighting with the restraints, kicking, and growling. (*Id.* at ¶ 95.) Within ten (10) minutes of placing Mr. Bornstein in the constant watch cell, around 6:15 p.m., Officer Piney relieved Constant Watch Officer Kerr for his dinner break. (*Id.* at ¶ 96.) According to the County Defendants, between 6:09 p.m. and 6:35 p.m., the nurse never requested to enter Mr. Bornstein's cell. (*Id.* at ¶ 97.) The officers' and nurse's first observation of Mr. Bornstein while he was in the constant watch cell was that he was slumped over in the restraint chair, with his eyes slightly open and fixed. (*Id.* at ¶ 98.) Mr. Bornstein was taken out of the restraint chair and placed on the ground and the nurses began performing CPR. (*Id.* at ¶ 99.) CPR was continued by the medical staff until first aid arrived at 7:08 p.m. (*Id.* at ¶ 100.) Mr. Bornstein was taken to Centrastate Hospital, where he was pronounced dead. (*Id.* at ¶ 103.)

On September 9, 2011, Israel Bornstein, as the administrator of the Estate of Amit Bornstein, filed the instant civil action, alleging claims against the County Defendants. (ECF No. 1.) On April 20, 2012, he filed an amended complaint alleging the same claims against the County Defendants but also adding claims against Defendant Correct Care Solutions, the

---

[2] This incident, as well as the incident which occurred with the officers in the hallway, was recorded on videotape and provided as an exhibit by the County Defendants. (Defs.' Br., Exs. H-I.)

medical provider at the jail. (ECF No. 12.) Plaintiff alleges claims for excessive force and wrongful death against Defendants Tift; Ricchiuti; Huddy; Hansson; Paul; Lombardo; Young; Theis; Bennett; Piney; Fisher; Sturt (Reyes); Roosback; Hafner; Millard; and John Does 1-10, based on the "unlawful malicious and physical abuse of Plaintiff." (Compl. ¶¶ 10-16.) Plaintiff alleges a claim for "unlawful custom, practice, policy/inadequate training" against Defendants County of Monmouth; Monmouth County Sheriff's Office and Monmouth County Correctional Institution based on the fact that the individual defendants were acting pursuant to an official policy, practice or custom of these defendants. (*Id.* at ¶¶ 18-19.) Plaintiff further alleges in this count that Defendants County of Monmouth; Monmouth County Sheriff's Office and Monmouth County Correctional Institution "failed to train, instruct, supervise, control, and discipline" the individual defendants. (*Id.* at ¶ 20.) Plaintiff alleges that Defendants County of Monmouth; Monmouth County Sheriff's Office and Monmouth County Correctional Institution were aware of "numerous similar prison encounters" involving the individual defendants, however Defendants County of Monmouth, Monmouth County Sheriff's Office and Monmouth County Correctional Institution failed to employ any type of corrective or disciplinary measures against the individual Defendants. (*Id.* at ¶ 21-22.)

In Count Four of the Amended Complaint, Plaintiff alleges a claim for "supervisory liability" against Defendants Bollaro and Noland. (*Id.* at ¶ 28.) Plaintiff alleges that Defendants Bollaro and Noland "either directed [the individual defendants] to violate Plaintiff's decedents [sic] constitutional rights or had knowledge of and acquiesced in his/their subordinates violations." (*Id.* at ¶ 30.) In Counts Five and Six of the Amended Complaint, Plaintiff alleges that CCS's doctor and nurses were negligent in the care they provided to Mr. Bornstein and that they "did not use reasonable and proper skill and care" in their treatment of him. (*Id.* at ¶¶ 33-

40.) In the final count of the Amended Complaint, Plaintiff alleges that Defendant CCS "negligently failed to provide the professional care and treatment or prognosis or to disclose to Plaintiff's decedents [sic], such alternatives thereto and the reasonable foreseeable risks and benefits involved as a reasonable practitioner would under similar circumstances have disclosed...." (*Id.* at ¶ 44.)

## II. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a

genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). To do so, the non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. In other words, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor – that no reasonable jury could find for him, summary judgment is appropriate." *Alveras v. Tacopina*, 226 F. App'x 222, 227 (3d Cir. 2007).

**B. Analysis**

**1. Individual County Defendants**

The individual County Defendants can be divided into two categories: (1) those who were merely present during the incident and/or did not use any force; and (2) those who were directly involved. The Court will address each category separately.

**a. Defendants Who Were Merely Present (Millard, Rossbach, Sturt/Reyes, Hafner and Fancher)**

8

Defendants Millard, Rossbach and Reyes argue that they did not make any physical contact with Mr. Bornstein and therefore cannot be found to have used excessive force. Defendants Hafner and Fancher argue that they only made physical contact with Mr. Bornstein to assist the medical professionals when they were examining him. Plaintiff does not point to any evidence in the record to contradict these assertions but instead argues that these defendants should be denied summary judgment because they failed to intervene during the incidents.

However, the Amended Complaint does not contain any allegations of failure to intervene against Millard, Rossbach, Sturt/Reyes, Hafner or Fancher. Rather, the only allegations are that these defendants "assaulted and battered the plaintiff's decedent resulting in his death." (Am. Compl. ¶ 9.) The undisputed evidence put forth by these Defendants is that they did not even touch Mr. Bornstein; or that they touched him merely to help the medical staff provide treatment. (Defs.' Br. 25-29.) Since the only allegations contained in the Amended Complaint against these Defendants are that they "assaulted and battered" Mr. Bornstein and the evidence put forth by Defendants, and not disputed by Plaintiff (*see* Summ. J. H'rg Tr. 7:19-22, Aug. 28. 2014), shows that they did not assault or batter him, the Court will grant the summary judgment for Millard, Rossbach, Sturt/Reyes, Hafner and Fancher.

**b. Non-Supervisory Defendants Involved in the Incident**

Defendants Bennett, Hansson, Huddy, Lombardo, Paul, Piney, Ricchiuti, Theis, Tift and Young all acknowledge using force against Mr. Bornstein during the evening of July 29, 2010. (Defs.' Br. 31.) These defendants seek summary judgment on the basis of qualified immunity.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, — U.S. —, —, 132 S.Ct. 2088, 2093, 182

L.Ed.2d 985 (2012). "The qualified immunity analysis is thus composed of two constituent questions: first, whether the plaintiff suffered a deprivation of a constitutional or statutory right; and second, if so, whether that right was 'clearly established' at the time of the alleged misconduct. If the answer to either question is 'no,' qualified immunity applies." *Barkes v. First Correctional Medical, Inc.*, --- F.3d ----, 2014 WL 4401051, at * 15 (3d Cir. Sept. 5, 2014). It is within the court's discretion to determine which prong to address first. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

With regard to the first prong of the analysis, Plaintiff has alleged that Mr. Bornstein's rights were violated when these defendants used excessive force on him. At the outset, both parties agree that Plaintiff was a pre-trial detainee at the time of the events in the Complaint. (County Defs.' Br. 21; Pl.'s Br. 29.) In the context of the appropriateness of certain jury instructions, the Third Circuit discussed the proper standard to use when evaluating claims of excessive force by pre-trial detainees.

> [W]e hold that the Eighth Amendment cruel and unusual punishments standards found in *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) and *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), apply to a pretrial detainee's excessive force claim arising in the context of a prison disturbance. We can draw no logical or practical distinction between a prison disturbance involving pretrial detainees, convicted but unsentenced inmates, or sentenced inmates. Nor can prison guards be expected to draw such precise distinctions between classes of inmates when those guards are trying to stop a prison disturbance.
>
> ...
>
> However, Fuentes' objection to having to prove that the prison guards' conduct "shocked the conscience," as required by the instruction, is somewhat more troublesome. Although "shocks the conscience" is a term of art in Fourteenth Amendment substantive due process jurisprudence, *see Rochin v. California*, 342 U.S. 165, 172–73, 72 S.Ct. 205, 96 L.Ed. 183 (1952), our recent decisions suggest that the standard may only apply to police pursuit cases. *See Fagan v. City of Vineland*, 22 F.3d 1296, 1306 (3d Cir.1994); *see also Kneipp v. Tedder*, 95 F.3d 1199, 1207–08 (3d Cir. 1996) ("We believe that the *Fagan II* shocks the

conscience standard is limited to police pursuit cases...."). Furthermore, in *Valencia v. Wiggins, supra*, the court rejected the contention that a pretrial detainee bringing an excessive force claim arising from a prison disturbance had to demonstrate that the prison guards' conduct "shocked the conscience."

Nonetheless, we believe that, in light of the Supreme Court's decision in *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), the "shocks the conscience" standard is not inappropriate to an excessive force claim in the context of a prison disturbance. *Lewis* involved a high speed police chase of a motorcycle that ended in the death of the passenger of the fleeing motorcycle. The parents of the decedent sued under 42 U.S.C. § 1983 alleging that the police conduct violated the constitutional rights of the decedent. The Court's analysis of the police conduct clarifies that the "shocks the conscience" standard of culpability applies in those instances where the police officer must instantaneously respond to a situation without opportunity for reflection on his or her actions. 118 S.Ct. at 1721.

In concluding that the "shocks the conscience" standard applies to police pursuit cases, the Court analogized the police officers' situation in a pursuit case to that of prison officials who have to immediately respond to a violent prison disturbance to restore and to maintain order and security. *Id.* at 1720 ("The analogy to sudden police chases (under the Due Process Clause) would be hard to avoid.").

...

Here, [the prison guards] were faced with [the prisoner's] disruptive and violent behavior for which they were not to blame. They could not take time to reason through various options to determine the most appropriate response. Rather, they had to quickly respond in order to quell the disturbance [the prisoner] was creating, and minimize the possibility of an escalating disruption inside the prison. Under those circumstances, we believe that the "shocks the conscience" test that the Supreme Court has utilized in analogous situations, including high speed chases, is the appropriate gauge of the conduct. Accordingly, we find no error in the Magistrate Judge's jury instruction.

*Fuentes v. Wagner*, 206 F.3d 335, 347-49 (3d Cir. 2000).

In this case, Defendants Bennett, Hansson, Huddy, Lombardo, Paul, Piney, Ricchiuti, Theis, Tift and Young all admit to using force. Though these officers argue that the amount of force used was within the confines of the jail's policy on usage of force, and does not "shock the conscience," the Court finds that there remains a question of fact as to whether the amount of force used was appropriate. The video provided by Defendants shows the incidents both in the

11

hallway and in the constant watch cell, and said video raise a question of fact as to whether Mr. Bornstein was resisting and what force, if any, was necessary. (*See* Defs.' SUMF ¶¶ 69-71; 92.) Based on these videos, as well as the testimony of the officers themselves, it cannot be stated that there is no genuine issue of material fact as to whether the amount of force used "shocks the conscience."

Moreover, Defendants have not met either prong of the qualified immunity test. At the outset, it does not appear that Defendants are arguing that the right of a pre-trial detainee to be free of excessive force was not "clearly established" at the time of the incidents. Nor could Defendants have made such an argument since "[t]he factors relevant to the excessive force analysis are well-recognized." *Suarez v. City of Bayonne*, 566 F. App'x 181, 186 (3d Cir. 2014) (citing *Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir. 2006)). With regard to the first prong of the qualified immunity analysis, while "[t]he issue of qualified immunity is generally a question of law, ... a genuine issue of material fact will preclude summary judgment on qualified immunity." *Barkes v. First Correctional Medical, Inc.*, --- F.3d ----, 2014 WL 4401051, at * 18 (3d Cir. Sept. 5, 2014) (internal citations omitted). As discussed above, based on the testimony of Defendants and the videos provided, there remains a question of fact as to whether the amount of force used was excessive.

Therefore, Defendants Bennett, Hansson, Huddy, Lombardo, Paul, Piney, Ricchiuti, Theis, Tift and Young's motion for summary judgment will be denied.

c.  **Supervisory Defendants**

Plaintiff alleges a claim for "supervisory liability" against Defendants Bollaro and Noland. (Am. Compl. ¶¶ 27-31.) Plaintiff alleges that these defendants "either directed [the

officers involved in the altercations] to violate Plaintiff's decedents [sic] constitutional rights or had knowledge of and acquiesced in his/their subordinates violations." (Am. Compl. ¶ 30.)

It is well-recognized that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012). Rather, state actors are liable only for their own unconstitutional conduct. *Id.* The Third Circuit recently addressed the issue of supervisory liability in § 1983 actions and held that pursuant to the Supreme Court's holding in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), "the level of intent necessary to establish supervisory liability will vary with the underlying constitutional tort alleged." *Barkes*, 2014 WL 440105, at * 9. The Third Circuit identified the standard to be used for an Eighth Amendment medical violation, but "[left] for another day the question whether and under what circumstances a claim for supervisory liability derived from a violation of a different constitutional provision remains valid." *Id.*

Since neither party had the benefit of the Third Circuit's decision in *Barkes* when addressing the issue of summary judgment for Defendants Bollaro and Nolan, the Court will deny the motion without prejudice and allow a new motion with supplemental briefing.

**d. Municipal Defendants**

In the Amended Complaint, Plaintiff alleges that acting pursuant to official policy, practice or custom, Defendants County of Monmouth, Monmouth County Sheriff's Office and Monmouth County Correctional Institution (collectively, the "Municipal Defendants") failed to train, instruct, supervise, control and discipline the supervisory and individual officers involved in the incidents with Mr. Bornstein. (Am. Compl. ¶ 20.) The Amended Complaint further alleges that the Municipal Defendants were aware of "numerous similar prison encounters"

involving these defendants however they failed to employ any type of disciplinary measures. (*Id.* at ¶¶ 21-22.)

A municipality or other local government may be liable under this section if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). They are not vicariously liable under § 1983 for their employees' actions. *See Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (collecting cases). "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official municipal policy caused their injury. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. These are actions for which the municipality is actually responsible." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011) (internal citations omitted).

A municipality's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. *Id.* Only if a municipality's failure to train its employees in a relevant respect amounts to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact," *Canton*, 489 U.S., at 388, 109 S.Ct. 1197, can it then be "properly thought of as a city policy or custom that is actionable under § 1983," *id.* at 389, 109 S.Ct. 1197. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

In this case, the record establishes that the Municipal defendants had in a place a policy for use of force training requirements. (Defs.' Br. 56-57.) The policy required mandatory, semi-annual training for each correctional institution officer. (*Id.*) However, the record establishes, and the Municipal Defendants do not contest, the fact that one officer, Officer Huddy, did not attend two training sessions in 2010, the year of the incident. (Defs.' Reply 17.) Moreover, in the two years prior to the incident, there were over 200 use-of-force reports filed regarding incidents at the jail. (Pl.'s Opp'n 39.) Based on the number of incidents in the previous two years and the fact that an officer involved in the incidents with Mr. Bornstein did not receive all of the training mandated by the Municipal Defendants' own policies, the Court finds that there remains a question of fact as to whether the Municipal Defendants were deliberately indifferent to the rights of Mr. Bornstein. The Municipal Defendants' motion for summary judgment will be denied.

## III. CONCLUSION

For the foregoing reasons, Defendants Millard, Rossbach, Sturt/Reyes, Hafner and Fancher's motions for summary judgment are granted. Defendants Bennett, Hansson, Huddy, Lombardo, Paul, Piney, Ricchiuti, Theis, Tift, Young, County of Monmouth, Monmouth County Sheriff's Office and Monmouth County Correctional Institution's motions for summary judgment are denied. The Court reserves decision on Defendants Bollaro and Noland's motions for summary judgment and will order supplemental briefing. An appropriate order accompanies this Opinion.

Dated: 9/25/14

Peter G. Sheridan, U.S.D.J.