NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ISRAEL BORNSTEIN, individually and as administrator of the estate of Amit Bornstein,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF MONMOUTH, et al.,<br><br>Defendants. | Civ. No. 11-5336<br><br>**OPINION** |

THOMPSON, U.S.D.J.

      This matter comes before the Court on Defendants' Appeal of Magistrate Judge Douglas E. Arpert's August 27, 2014 Memorandum Opinion and Order. (Doc. No. 157). The Order denied Defendants' Motion to Seal Exhibits H and I of Plaintiff's Certification in support of its Opposition to Defendants' Motion for Summary Judgment. (Doc. No. 155). Plaintiff and Intervenor CBS Broadcasting Inc. oppose Defendants' Appeal. (Doc. No. 158, 159). The Court has decided the motion upon the written submissions of the parties and without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated below, the Magistrate Judge's ruling will be affirmed.

**BACKGROUND**

      This case involves a 42 U.S.C. § 1983 claim arising from the death of Amit Bornstein, who died while confined in the Monmouth County Correctional Institution ("MCCI") on July 29, 2010. Plaintiff Israel Bornstein, the deceased's father, brings this suit individually and as the

1

administrator of his son's estate against twenty defendants of Monmouth County and Correct Care Solutions, LLC (collectively, "Defendants").[1]

On July 29, 2010, Bornstein was arrested pursuant to a warrant and transported to MCCI for booking. (Doc. No. 157 at 3). During the booking process, Bornstein was involved in an altercation, and several officers used force to restrain him. (*Id.*). Bornstein was then escorted to the nurse's station and the medical section of MCCI, where he was ordered to be placed within MCCI's constant watch area. (*Id.*). As officers were attempting to disrobe him and place him in a suicide smock, he became disruptive, and force was again used to restrain him. (*Id.*). Ultimately, Bornstein was placed in a restraint chair in a constant watch cell. (*Id.*). Approximately thirty minutes later, he was found to have a shallow heartbeat and lost consciousness. (*Id.*). He was removed from the chair, CPR was performed, and he was transferred to CentraState Hospital, where he was pronounced dead shortly after arrival. (*Id.*).

Plaintiff filed this lawsuit on September 9, 2011. (Doc. No. 1). He filed an Amended Complaint on April 20, 2012. (Doc. No. 12). On November 13, 2013, Defendants filed a Motion for Summary Judgment. (Doc. No. 66). Plaintiffs filed an Opposition to the Motion, including Exhibits H and I[2] in their filing, on January 7, 2014. (Doc. No. 86). Exhibits H and I consist of video footage at MCCI showing Bornstein's confinement on July 29, 2010. The booking and constant watch areas depicted in the videos are both considered "restricted access areas," meaning that members of the general public and inmates are generally not permitted access to these areas without supervision. (Doc. No. 121, Cert. Donald Sutton ¶ 5). On May 12, 2014, Defendants, after learning that the *New York Post* sought to obtain copies of the video

---

[1] For purposes of this Opinion, "Defendants" refers to the Monmouth County Defendants only since Correct Care Solutions, LLC did not join in the Motion to Seal or subsequent Appeal.
[2] These exhibits had been previously produced by Defendants in discovery under a protective order.

2

footage, requested the temporary sealing of the exhibits pending a formal motion. (Doc. No. 120, 121 at 5). The Magistrate Judge granted Defendants' request. (Doc. No. 120). On May 27, 2014, Defendants filed a Motion to Seal Exhibits H and I. (Doc. No. 121). Plaintiff and Intervenor CBS Broadcasting, Inc.[3] opposed the Motion. (Doc. No. 123, 127). The American Civil Liberties Union of New Jersey also filed an *amicus curiae* brief opposing Defendants' Motion to Seal. (Doc. No. 144, 145). On August 27, 2014, Magistrate Judge Arpert denied Defendants' Motion to Seal in a memorandum opinion and order, and this Appeal followed. (Doc. No. 155, 157).

## DISCUSSION

A. Legal Standard

On review of a magistrate judge's decision on a non-dispositive matter, the moving party bears the burden of demonstrating that the decision is "clearly erroneous or contrary to law." *See* Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A). A finding is clearly erroneous when, although there is evidence to support it, a court reviewing all the evidence is left with the definite and firm conviction that a mistake has been committed. *Haines v. Liggett*, 975 F.2d 81, 92 (3d Cir. 1992) (citing *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "[A] ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law." *D'Onofrio v. Borough of Seaside Park*, No. 09-6220, 2012 WL 6672303, at *2 (D.N.J. Dec. 20, 2012) (citations omitted). In other words, a magistrate judge's factual findings are reviewed under the "clearly erroneous" standard, and legal conclusions are reviewed *de novo*. *See Haines*, 975 F.2d at 91; *Levine v. Voorhees Bd. of Educ.*, No. 07-1614 (RMB), 2009 WL 2855437, at *2 (D.N.J. Sept. 1, 2009).

---

[3] Intervenor CBS Broadcasting Inc.'s Motion to Intervene was granted solely for the limited purpose of being heard in opposition to Defendants' Motion to Seal. (Doc. No. 127).

3

B. Analysis

Motions to Seal are assessed under the four factor standard of Local Civil Rule 5.3(c)(2), which requires the moving party to describe "(a) the nature of the materials or proceedings at issue, (b) the legitimate private or public interests which warrant the relief sought, (c) the clearly defined and serious injury that would result if the relief sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available." In addition, where a party seeks to seal a pretrial motion of a "nondiscovery nature," as is the case here, the moving party must overcome a "presumptive right of public access" based in common law and the First Amendment. *Leucadia v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 164 (3d Cir. 1993); *see also In re Cendant Corp.*, 260 F.3d 183, 198 n.13 (3d Cir. 2001). To overcome this presumption, the moving party must demonstrate good cause for protecting the material at issue. *Leucadia*, 998 F.2d at 164. Good causes exists where "disclosure will cause a clearly defined and serious injury." *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) and numerous good cause factors to consider). "In short, to prevail on a Motion to Seal court records, a movant bears the burden to show that the interest in secrecy outweighs the presumption of access." *Darkins v. Cont'l Airlines, Inc.*, No. 10-6165-ES-SCM, 2013 WL 3285049, at *3 (D.N.J. June 27, 2013).

Here, the Magistrate Judge's August 27, 2014 Opinion denied Defendants' Motion to Seal on the grounds that Defendants (1) did not articulate a legitimate interest warranting the relief sought, (2) did not adequately identify a serious and clearly defined injury that would result if the relief sought were not granted, and (3) did not establish why less restrictive alternatives to sealing the exhibits are unavailable. (Doc. No. 155). Defendants, in their Appeal, assert that the

Magistrate Judge's ruling was clearly erroneous or contrary to law as to those three elements of L. Civ. R. 5.3(c)(2), each of which will be examined by this Court below.

1. *Legitimate Interests*

Defendants argue that they have adequately demonstrated that the legitimate public interest of maintaining MCCI's institutional security supports sealing of the exhibits and that the Magistrate Judge's opinion is clearly erroneous for two reasons.[4]  First, Defendants allege that the opinion contains an "internal inconsistency" baecause it acknowledged an important interest in maintaining MCCI's institutional security but simultaneously concluded that institutional security was not a "legitimate" interest pursuant to the second element of L. Civ. R. 5.3(c)(2). Second, Defendants argue that the Magistrate Judge improperly relied on the fact that Plaintiff's unsealed briefs included descriptions of the restricted areas depicted in the video, as this fact "has no bearing on the analysis of whether the Monmouth County Defendants have established a legitimate public interest."  (Doc. No. 157 at 13-14) (emphasis omitted).

However, Defendants' brief on appeal misconstrues the standard under L. Civ. R. 5.3(c)(2), which requires the moving party to describe "the legitimate private or public interests *which warrant the relief sought*." (emphasis added).  It is undeniable that Defendants possess a legitimate interest in protecting MCCI's institutional security; however, the issue is whether Defendants have shown that preservation of this interest necessitates sealing of the exhibits.  If all sensitive information in the exhibits had already been previously disclosed, then public release of the exhibits would have no impact on institutional security, and thus, the interest of institutional security would not warrant sealing of the exhibits.  Therefore, the Magistrate

---

[4] On appeal, Defendants did not pursue their argument that the interest in protecting potential jurors from the influence of media sensationalism justified sealing of the videos.  Since the Court agrees with the Magistrate Judge's prior disposal of this claim, it will not be discussed here.

5

Judge's reliance on the fact that descriptions of the video footage appeared in other parts of the record was not improper. *See Securimetrics, Inc. v. Iridian Techs. Inc.*, No. 03-4394 (RBK), 2006 WL 827889, at *4 (D.N.J. Mar. 30, 2006) (finding factor (b) of L. Civ. R. 5.3(c)(2) not satisfied where the allegedly confidential material "[has] already been revealed to the public in previous court filings").

In addition, in evaluating a Motion to Seal the Court must weigh the interest in confidentiality against the strong presumption of public access. *See Leucadia*, 998 F.3d at 164 (describing the "presumptive right of public access to pretrial motions of a nondiscovery nature"); *Yansick v. Temple Univ. Health Sys.*, 297 Fed. App'x 111, 115 (3d Cir. 2008) (denying plaintiff's motion to seal since he "fail[ed] to show that the balance of relevant interests weigh in favor of confidentiality"). Here, the Magistrate Judge appropriately identified several factors weighing in favor of public access to the exhibits, specifically noting "the presence of public litigants, information concerning public safety, and litigation regarding important public issues." (Doc. No. 155 at 4, *see also Pansy*, 23 F.3d at 787–89). After reviewing the record, the Court does not find that the Magistrate Judge's ruling with respect to the second element of L. Civ. R. 5.3(c)(2) was "clearly erroneous or contrary to law."

2. *Serious Injury*

Defendants also assert that the standard applied by the Magistrate Judge with respect to the third element of L. Civ. R. 5.3(c)(2) was impractical and overly stringent, forcing corrections departments to "lay out a step-by-step assault plan as to how their own institution will be attacked in order to successfully meet the 'clearly defined and serious harm' criteria." (Doc. No. 157 at 15). Contrary to the Magistrate Judge's ruling that Defendants' alleged harms were merely "vague and speculative," Defendants contend that they have adequately articulated two

6

harms that will result if the videos are publicly released. (Doc. No. 155 at 4-5, Doc. No. 157 at 17-19). First, Defendants explain that one of the videos allows a single viewer to see sixteen different camera frames simultaneously and thus discern institution wide response patterns to a disturbance and "develop a multitude of ways to wage an assault on MCCI." (Doc. No. 157 at 15-16). Second, Defendants claim that viewers could study the security footage for unlimited amounts of time and identify possible blind spots in the camera coverage. (*Id.* at 18). Furthermore, they assert that any descriptions of the videos' contents in other parts of the record are not dispositive because such "references do not provide the level of detail that a person would be able to extract from reviewing the security footage." (*Id.* at 19).

After reviewing the record, the Court finds that Defendants have not shown that public release of the disputed exhibits would cause a clearly defined and serious harm in light of the extensive and detailed descriptions of the events depicted in the videotapes in other portions of the record. *See Securimetrics*, 2006 WL 827889, at *5 (finding factor (c) of L. Civ. R. 5.3(c)(2) unsatisfied where the documents sought to be sealed "[did] not appear to contain any previously undisclosed 'confidential financial and business information'"). While Defendants' security concerns are valid and may be sufficient to assert a "clearly defined and serious injury" under other circumstances, they are not compelling given the facts at hand.

Here, the exhibits were already part of the record for four months before Defendants' filed their motion to seal.[5] In addition, despite the "restricted access area" label, the booking and constant watch areas depicted in the videos appear to be in the plain view of inmates, as evidenced by the multiple witnesses who provided statements to Plaintiff. (Doc. No. 86, Ex. A-

---

[5] Plaintiff's Opposition to Defendants' Motion for Summary Judgment, which contains Exhibits H and I, was filed on January 7, 2014. (Doc. No. 86). On May 12, 2014, Defendants requested the temporary sealing of Exhibits H and I pending filing of a motion to seal. (Doc. No. 119).

D).  To the extent that Defendants are concerned about the disclosure of MCCI's institution-wide response to a disturbance, they have not asserted that the response conducted by officers in this case involved special or confidential tactics.[6]  *See Johnson v. Sullivan*, No. 08-3346 (JBS/AMD), 2009 WL 2365478, at *3 (D.N.J. July 29, 2009) (finding no confidentiality where no special investigative tactics or confidential sources are employed).  Also, with respect to the disclosure of potential blind spots in MCCI's camera coverage, Defendants' briefs have not asserted that the camera locations are concealed from prisoners or that their positions and angles are fixed and cannot be repositioned.  Indeed, it appears that some, though not all, inmates are already aware of the location of the cameras in MCCI's booking and constant watch areas and have stated the locations on the record.  (Doc. No. 86, Ex. A. at 9, Ex. B at 4).  Moreover, Defendants' own depositions identify camera locations as well as the physical layout of the booking and constant watch areas,[7] and the unsealed statement of Plaintiff's Expert Martin F. Horn includes extensive detail on the contents of the videos.  (Doc. No. 86, Ex. E).  Although the Court acknowledges that video evidence is more accessible than written statements and other types of documentation, after viewing the footage in the context of the entire record, the Court does not believe that the exhibits disclose significant confidential information beyond what has already been revealed to inmates or in other parts of the record.  Thus, Defendants' concerns about the videos revealing MCCI's institution-wide response patterns and potential blind spots in aid of a potential attack are speculative, and Defendants have not identified a serious and clearly defined harm that would result from not sealing the exhibits.

---

[6] Defendants' brief asserts that the video footage "depicts MCCI's standard correctional officer response protocol involving uses of force."  (Doc. No. 157 at 4).

[7] For example, see Doc. No. 66, Christopher Piney Dep. at 50:4-9, 55; Daniel Hansson Dep. at 26:14-16; Donald Bennett Dep. at 19-21, 27, 37; Doc. No. 158 at 7-11.

Moreover, in light of the strong presumption in favor of public access to judicial proceedings, which is especially applicable here where the case involves a public entity and addresses matters of public concern, Defendants have not shown that the weighing of interests tips in favor of confidentiality. Therefore, the Court does not find the Magistrate Judge's ruling on the third factor of L. Civ. R. 5.3(c)(2) to be "clearly erroneous or contrary to law."

   3. *Less Restrictive Alternatives*

Finally, Defendants assert that they have demonstrated the lack of less restrictive alternatives to sealing the video exhibits in their entirety. They claim that they have no means to manipulate the video to remove all sensitive visual depictions. However, these assertions are conclusory without any additional elaboration. For example, the deceased appears primarily in four[8] of the sixteen camera feeds shown on the complete video submitted as Exhibit I. Thus, to minimize alleged risks of revealing MCCI's institution-wide response or potential blind spots, it would seem that at the very least, the video could have been modified to block out the remaining twelve camera frames. Therefore, while the Court does not find that the videos contain confidential material warranting protection, even if there was any sensitive information contained within, Defendants have not demonstrated the unavailability of less restrictive alternatives to sealing the videos in their entirety. Accordingly, the Magistrate Judge's ruling on this final factor of L. Civ. R. 5.3(c)(2) was not "clearly erroneous or contrary to law."

## CONCLUSION

For the reasons above, the Court will affirm the Magistrate Judge's August 27, 2014 Memorandum Opinion and Order.

<div style="text-align: right">

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.

</div>

---

[8] These are cameras 1, 2, 8, and 13.