NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ISRAEL BORNSTEIN,

Plaintiff,

v.

COUNTY OF MONMOUTH, et al.,

Defendants.

Civ. No. 11-5336

**OPINION**

THOMPSON, U.S.D.J.

This matter comes before the Court upon the Motion of Defendants Lieutenant Thomas Bollaro and Sergeant Kenneth Noland (collectively "Defendants") for Summary Judgment. (Doc. No. 166). Plaintiff opposes. (Doc. No. 172). The Court has issued the Opinion below based on the parties' written submissions and without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated herein, Defendants' Motion for Summary Judgment will be granted in part and denied in part.

BACKGROUND

This action involves claims under 42 U.S.C. § 1983 arising from the death of Amit Bornstein, who died while confined in the Monmouth County Correctional Institution ("MCCI") on July 29, 2010. Plaintiff Israel Bornstein, the deceased's father, brings this suit individually and as the administrator of his son's estate against twenty defendants of Monmouth County (collectively, "Monmouth County Defendants") and Correct Care Solutions, LLC ("CCS").

On July 29, 2010, officers arrested Bornstein pursuant to a warrant and transported him to MCCI for booking. (Defs.' General Statement of Undisputed Material Facts ("SUMF") ¶¶ 23-

1

29, Doc. No. 66-72).[1]  During the booking process, Defendant Lt. Bollaro requested that a phone number be retrieved from Bornstein's phone in order to make arrangements for the care of Bornstein's younger brother.  (*Id*. ¶ 50).  After the phone number was retrieved, Bornstein became uncooperative, and several officers used force to restrain him.  (*Id*. ¶¶ 51-73).  Defendant Sgt. Noland ordered the officers to shackle Bornstein, and another officer pepper sprayed him.  (*Id*. ¶¶ 74-80).  Bornstein was then taken to the nurse's station, and a spit mask was placed on him.  (*Id*. ¶ 81).  Since he was wiggling out of his chair and falling to the ground, Sgt. Noland instructed the officers to leave him on the ground.  (*Id.* ¶ 82).  Lt. Bollaro saw Bornstein handcuffed on the ground and ordered officers to place him in a wheelchair and escort him to the medical station, where a dose of Ativan was administered to calm Bornstein.  (*Id*. ¶¶ 83-86; Doc. No. 66-1, at 49).  Afterwards, officers wheeled him into MCCI's constant watch area, where he again became resistant, resulting in another round of force.  (*Id*. ¶¶ 87-93).  Ultimately, Bornstein was placed in a restraint chair in a constant watch cell.  (*Id*. ¶¶ 94-95).  Approximately thirty minutes later, officers found him with a shallow heartbeat and lost consciousness.  (*Id*. ¶¶ 96-99).  They removed him from the chair, performed CPR, and transferred him to CentraState Hospital, where he was pronounced dead shortly after arrival.  (*Id*. ¶¶ 99-103).

Plaintiff filed this lawsuit alleging excessive force and wrongful death pursuant to 42 U.S.C. § 1983 on September 9, 2011.  (Doc. No. 1).  He filed an Amended Complaint on April 20, 2012, adding Defendant Correct Care Solutions, LLC, the medical provider at MCCI.  (Doc. No. 12).  On November 13, 2013, Monmouth County Defendants moved for summary judgment, which Plaintiff opposed.  (Doc. No. 66, 86).  After oral arguments were held on August 28, 2014,

---

[1] As noted in the Court's September 25, 2014 Opinion (Doc. No. 161), Plaintiff did not submit an opposing Local Civil Rule 56.1 Statement of Undisputed Material Facts.  Thus, unless disputed by Plaintiff's brief or contradicted by the evidence, the Court will deem the County Defendants' facts admitted.

the Court issued its ruling partially granting and partially denying the Motion.  (Doc. No. 156,

161).  In its Order, the Court allowed Defendants Bollaro and Noland to refile their Motion for

Summary Judgment with a supplemental brief addressing the impact, if any, of the Third

Circuit's recent decision in *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307 (2014) on

supervisory liability.  (Doc. No. 162).  On October 24, 2014, these two Defendants re-filed the

present Motion for Summary Judgment.  (Doc. No. 166).

## DISCUSSION

A.  Legal Standard

Summary judgment shall be granted if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A fact is "material" if it will "affect the outcome of the suit under the governing law . . . ."

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute is "genuine" if it could

lead a "reasonable jury [to] return a verdict for the nonmoving party."  *Id.*  When deciding the

existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all

reasonable "inferences, doubts, and issues of credibility should be resolved against the moving

party."  *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n.2 (3d Cir. 1983).  The movant

"always bears the initial responsibility of informing the district court of the basis for its motion,

and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes demonstrate the

absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)

(quoting Fed. R. Civ. P. 56(c)).  Then, "when a properly supported motion for summary

judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a

genuine issue for trial.'"  *Anderson,* 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).  The non-

movant's burden is rigorous: it "must point to concrete evidence in the record;" mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. *Orsatte v. N.J. State Police,* 71 F.3d 480, 484 (3d Cir. 1995); *Jackson v. Danberg,* 594 F.3d 210, 227 (3d Cir. 2010) (citations omitted) ("[S]peculation and conjecture may not defeat summary judgment.")

B.  Analysis

Count Four of Plaintiff's Amended Complaint alleges that Defendants Bollaro and Noland were supervisory officials who "directed" the unlawful actions of their subordinate officers or "had knowledge of and acquiesced in" their subordinates' violations.  (Doc. No. 12 at 11, ¶ 30).  Lt. Bollaro and Sgt. Noland seek summary judgment on the grounds that Plaintiff fails to adequately plead claims for supervisory liability.  (Doc. No. 66-1 at 47-51; Doc. No. 166).

Section 1983 allows an injured plaintiff to bring suit against every person who, under color of state law, "subjects, or causes to be subjected" the plaintiff to a deprivation of a federally protected right.  42 U.S.C. §1983.  However, "[a] defendant in a civil rights action must have *personal involvement* in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior."  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988) (emphasis added).  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence [in the constitutional violation]."  *Id.* at 1208; *see also Barkes v. First Correctional Medical, Inc*., 766 F.3d 307, 316 (3d Cir. 2014).  "To establish knowledge and acquiescence of a subordinate's misconduct, a plaintiff must allege the defendant's (1) contemporaneous knowledge of the offending incident or knowledge of similar incidents in the past, and (2) actions or inactions which communicated approval of the subordinate's behavior."  *Broadwater v. Fow*, 945 F. Supp. 2d 574, 588 (M.D. Pa. 2013).  "A plaintiff may not allege that a supervisory defendant had constructive knowledge of a

subordinate's unconstitutional conduct simply because of his role as a supervisor." *Id.* Although the standard requires the supervisory defendant to have actual knowledge of the misconduct, the knowledge may be inferred from the circumstances. *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995). Lastly, allegations of participation or actual knowledge and acquiescence must be made with appropriate particularity. *Boykins v. Ambridge Area School District*, 621 F.2d 75, 80 (3d Cir. 1980).

Recently, the Third Circuit in *Barkes v. First Correctional Medical, Inc.* ruled that supervisory liability under §1983 in the Eighth Amendment context survived the Supreme Court's ruling in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). 766 F.3d at 319–20. Specifically, the Court reaffirmed its four-part standard, established in *Sample v. Diecks*, for determining whether an official may be held liable on a §1983 Eighth Amendment claim for failure to supervise. *See id.* (citing *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989)). In reaching its conclusion, the Court stated that "under *Iqbal*, the level of intent necessary to establish supervisory liability will vary with the underlying constitutional tort alleged." *Id.* at 319.

Since the parties in the present case did not have the benefit of the *Barkes* opinion when briefing Defendants' Motion for Summary Judgment, the Court directed the parties to provide supplemental briefing on the impact, if any, of *Barkes*. After reviewing the parties' submissions, the Court does not find that *Barkes* altered the personal involvement standard for supervisory liability applicable to this case. The *Barkes* court identified "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates[:]" (1) liability based on an establishment of policies, practices or customs that directly caused the constitutional violation and (2) personal liability based on the supervisor participating in the violation of Plaintiff's rights, directing others to violate Plaintiff's rights, or having knowledge of

and acquiescing to a subordinate's conduct.  *Id*. at 316.  The violation alleged in *Barkes* fell into

the first category, as it was based on a supervisory officer's failure to supervise with respect to a

deficient prison mental health screening policy, while the case at hand presents a claim within

the second category, which, beyond mere identification, is not addressed further in *Barkes*.

Thus, the *Barkes* ruling is not directly applicable here.  Although the Third Circuit's reasoning in

*Barkes* relies on the broader notion that the standard for supervisory liability varies with the

underlying constitutional tort alleged, ultimately, the *Barkes* ruling is limited to affirming its

previously established *Sample* standard and does not indicate an intent to change existing

standards on supervisory liability.  Indeed, *Barkes* expressly states that it would "leave for

another day the question of whether and under what circumstances a claim for supervisory

liability derived from a violation of a different constitutional provision remains valid."  *Id*. at

320.  Had the Third Circuit intended to overrule existing standards for supervisory liability, it

would have spoken more clearly.  Therefore, the Court does not find that *Barkes* alters the well-

established personal involvement standard for supervisory liability.  *See Rode*, 845 F.2d at 1207–

08; *Baker*, 50 F.3d at 1193–94.  Nevertheless, out of an abundance of caution, the Court will also

assess Defendants Bollaro and Noland's Summary Judgment Motion under the broader

principles articulated in *Barkes*.

     In *Barkes*, the Third Circuit reasoned that since the underlying tort was the denial of

adequate medical care in violation of the Eighth Amendment, which has an accompanying

mental state of subjective deliberate indifference, in order to hold a supervisor liable for failure

to supervise in the context of a deficient mental health screening policy, there must also be

deliberate indifference on the part of the supervisor, as assessed under the four part *Sample* test.

*See Barkes*, 766 F.3d at 320.  Here, the underlying tort is excessive force against a pretrial

6

detainee, which is assessed under the due process "shocks the conscience" standard.  *See Fuentes*

*v. Wagner*, 206 F.3d 335, 347–49 (3d Cir. 2000).

       *i.*      *Lieutenant Bollaro*

      Defendants assert that there is no dispute of material fact as to Lt. Bollaro's lack of

liability in the use of force against Bornstein, and thus he is entitled to judgment as a matter of

law.  The Court agrees.  The record indicates that Lt. Bollaro neither directed, participated in, nor

was present during subordinate officers' use of force against Bornstein.  (Doc. No. 66, Statement

of Thomas Bollaro, at ¶ 22).  It appears that Lt. Bollaro's only involvement is that: (1) he

instructed officers to retrieve a phone number from Bornstein's phone in order to arrange for the

supervision of Bornstein's minor brother; and (2) he was in the booking area for a short period of

time where he saw Bornstein handcuffed on the floor near the nurse's area and ordered him to be

placed in a chair and escorted to the medical section.  (*Id.* at ¶¶ 13-14, 19-21).  Additionally, Lt.

Bollaro's deposition testimony stated that he did not see any officers have physical contact with

Bornstein.  (Doc. No. 66, Ex. NN, at 54:13-24).  Plaintiff has not identified any specific facts on

the record to suggest that Lt. Bollaro participated in, directed, or had knowledge of and

acquiesced to Bornstein's treatment by other officers.  Therefore, the Court will grant summary

judgment for Lt. Bollaro.

       *ii.*     *Sergeant Noland*

      In contrast, there exists a material issue of fact whether Sgt. Noland had personal

involvement in the alleged violations and whether his conduct shocks the conscience.  Sgt.

Noland was physically present and overseeing his subordinates' actions during the course of

Bornstein's confinement at MCCI.  Specifically, he observed his subordinates' use of force and

at a few points issued orders directing these officers to leave Bornstein on the ground in the

nurse's station, to shackle him when he was kicking, and to remove his clothes and take control of his arms while he was resisting in the constant watch cell.  (SUMF at ¶ 74, 82; Doc. No. 66, Statement of Kenneth Noland, at ¶¶ 13- 44).  Thus, a reasonable jury could find that at a minimum, Sgt. Noland had contemporaneous knowledge of and acquiesced to Bornstein's treatment by other officers.  *See Baker*, 50 F.3d 1186 at 1193–94 (finding personal involvement where a supervisor was present at the scene of but did not direct nor see the unlawful conduct).

In addition, this Court previously found there to be a genuine issue of material fact whether the force used by subordinate officers violated Plaintiff's constitutional rights.  (Doc. No. 161 at 11-12).  Just as a reasonable jury could find, based on the video evidence and statements of the officers, that the force used by the subordinate officers shocked the conscience, drawing all reasonable inferences in favor of Plaintiff as the non-moving party, a reasonable jury could also find that Sgt. Noland's conduct in permitting Bornstein's treatment by other officers shocked the conscience, especially considering the cumulative amount of force used against him by multiple officers in multiple instances.  There remains a genuine dispute of material fact whether Sgt. Noland was personally involved in the alleged constitutional violations and whether his conduct shocks the conscience.  Therefore, Sgt. Noland's Motion for Summary Judgment will be denied.

CONCLUSION

For the reasons above, Defendants' Motion for Summary Judgment will be granted with respect to Lt. Bollaro, but will be denied with respect to Sgt. Noland.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.