NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ISRAEL BORNSTEIN, as administrator of the estate of Amit Bornstein, | Civ. No. 11-5336 |
| Plaintiff, | **OPINION** |
| v. | |
| COUNTY OF MONMOUTH, et al., | |
| Defendants. | |

THOMPSON, U.S.D.J.

This matter comes before the Court upon Plaintiff's Appeal of Magistrate Judge Douglas E. Arpert's February 9, 2015 Order and March 9, 2015 Memorandum Opinion and Order, both of which denied Plaintiff's motion to file a second amended complaint.  (Doc. Nos. 201, 209, 297).  Defendant Correct Care Solutions, LLC ("CCS") opposes.  (Doc. Nos. 307, 308).  The Court has decided the Motion based on the parties' written submissions and without oral argument pursuant to Local Civil Rule 78.1(b).  For the reasons below, the Court will affirm Judge Arpert's ruling.

### BACKGROUND

This action involves claims of excessive force and medical malpractice arising from the death of Amit Bornstein, who died while confined in the Monmouth County Correctional Institution ("MCCI") on July 29, 2010.  Given the extensive proceedings in this case, the parties' familiarity with the matter is presumed, and the Court will briefly recount only those facts from trial relevant to the present motion.

On July 29, 2010 Monmouth County officers arrested Amit Bornstein pursuant to a warrant and transported him to MCCI for booking.  During the booking process, a dispute arose between Bornstein and some officers regarding Bornstein's desire to use his cell phone.  An altercation followed shortly thereafter.  Officers used force to restrain Bornstein, and Bornstein was pepper sprayed.  He was then taken to the nurse's station, and a spit mask was placed on him.  At some later point, CCS nurses cleaned the pepper spray from his face.  A nurse evaluated him, consulted a doctor regarding the potential need for sutures to his lacerations, and administered a dose of Ativan to calm him down.  Bornstein was then taken to MCCI's constant watch area, where he allegedly became resistant again, resulting in another round of force.  Ultimately, officers placed Bornstein in a restraint chair and left him in a constant watch cell.  A CCS nurse observed Bornstein through the cell window approximately fifteen minutes later.  Roughly fifteen minutes after that, a CCS nurse requested entry to the cell and contacted an MCCI supervisor to unlock the cell door.  The nurse found Bornstein to be unresponsive, with a shallow heartbeat and lost consciousness.  Bornstein was removed from the chair, CPR was performed, an ambulance was called, and he was transferred to CentraState Hospital, where he was pronounced dead.

On September 9, 2011 Plaintiff filed a Complaint against Monmouth County Defendants. (Doc. No. 1).  Magistrate Judge Arpert set an April 1, 2012 deadline for amendments of pleadings in his January 17, 2012 Scheduling Order.[1]  (Doc. No. 7).  On April 20, 2012 Plaintiff filed an Amended Complaint ("AC"), adding CCS as a new party.  (Doc. No. 11).  On September

---

[1] The April 1 deadline was extended to April 20, 2012.  (Doc. No. 10). Although the Pretrial Scheduling Order was subsequently modified multiple times, it appears that the deadline for amendments of pleadings was never extended beyond April 20, 2012.  (Doc. Nos. 19, 38, 40, 49, 111, 117, 164).

25, 2014 District Judge Peter Sheridan, to whom this case was originally assigned, issued an Opinion and Order denying CCS's motion for summary judgment and stating that Plaintiff's AC only asserted medical malpractice claims against CCS, not any § 1983 claims.  (Doc. No. 160 at 3).  On November 14, 2014 this Court issued a Memorandum Order repeating that the AC alleged no § 1983 claims against CCS.  (Doc. No. 171).  The final pre-trial conference was held on December 15, 2014 before Magistrate Judge Arpert.  (Docket Entry dated 12/16/14).  The joint final pre-trial order ("FPO") was signed by Judge Arpert and filed on January 7, 2015. (Doc. No. 177).  Trial was scheduled to start less than a month later, on February 2, 2015 before District Judge Anne Thompson, to whom the case had been reassigned.  On January 28, 2015, trial was re-scheduled to February 17, 2015.  (Doc. No. 199).

Plaintiff filed the Motion to Amend that is the subject of this Appeal on January 29, 2015, seeking to add against CCS a § 1983 claim of deliberate indifference to medical needs in violation of the Eighth and Fourteenth Amendments.[2]  (Doc. No. 201).  Magistrate Judge Arpert issued an Order denying Plaintiff's Motion on February 9, 2015, but did not issue an Opinion outlining the basis for the Order until March 9, 2015, after trial had concluded on March 6, 2015. (Doc. No. 297).  At trial, shortly after Plaintiff rested his case, the issue of Judge Arpert's Order arose for the first time, prompted by this Court.  (February 26, 2015 afternoon conference). Plaintiff asserted that he had not sought an appeal of that Order because Judge Arpert had not yet issued an Opinion.  (*Id*.)  Plaintiff filed a letter explaining this position the next day, but took no further action to file an appeal or state any objections or intentions to appeal.  (Doc. No. 274). Plaintiff also withdrew his wrongful death claim.  (Doc. No. 284).

---

[2] It appears that Plaintiff also sought to assert a second new claim under the Survivor's Act, but that is not the subject of this Appeal.  (Doc. Nos. 185, 242; February 26, 2015 afternoon conference).

At this time, CCS also moved for judgment on Plaintiff's medical malpractice claim based on the fact that Plaintiff did not call to the stand any health experts qualified to testify on the relevant standard of care under New Jersey's Patients First Act, N.J.S.A. § 2A:53A-41.  (Doc. Nos. 160, 171; February 26, 2015 afternoon conference).  At some point, Plaintiff stated that its decision not to call such experts was "strategic."  (March 3, 2015 morning conference).  The Court reserved a decision on CCS's motion, since Plaintiff argued that it was pursuing a common knowledge negligence theory as the basis for the malpractice claim.  CCS proceeded to put on its defense, and at the conclusion, the court granted CCS's motion for judgment on March 3, 2015.  (Doc. No. 294).  Thus, the case went to the jury only on claims against the Monmouth County Defendants.  On March 6, 2015 the jury returned a no cause verdict against Plaintiff.  (Doc. No. 301).  On March 20, 2015 Plaintiff filed the present appeal from Magistrate Judge Arpert's Opinion and Order denying Plaintiff's Motion to Amend.  (Doc. No. 303).

## DISCUSSION

### A.  Legal Standard

When appealing a magistrate judge's ruling on a non-dispositive matter—including a motion to amend—the moving party bears the burden of demonstrating that the decision is "clearly erroneous or contrary to law."  *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A); *Kuchinsky v. Pressler & Pressler, LLP*, No. 12-01903 CCC, 2014 WL 1679760, at *2 (D.N.J. Apr. 28, 2014) ("A motion to amend a complaint is 'usually considered non-dispositive.'").  A finding is clearly erroneous when, despite some evidence to support it, a court reviewing all the evidence is left with "the definite and firm conviction that a mistake has been committed."  *Haines v. Liggett*, 975 F.2d 81, 92 (3d Cir. 1992) (citing *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  "[A] ruling is contrary to law if the magistrate judge has

misinterpreted or misapplied applicable law." *D'Onofrio v. Borough of Seaside Park*, No. 09-6220, 2012 WL 6672303, at *2 (D.N.J. Dec. 20, 2012) (internal citations omitted).  In other words, a magistrate judge's factual findings are reviewed under the "clearly erroneous" standard, and legal conclusions are reviewed *de novo*.  *See Haines*, 975 F.2d at 91; *Levine v. Voorhees Bd. of Educ.*, No. 07-1614 (RMB), 2009 WL 2855437, at *2 (D.N.J.  Sept. 1, 2009).  Lastly, under Local Civil Rule 72.1(c)(1)(A), appeals from a magistrate judge's ruling on a non-dispositive matter must be sought within 14 days after parties have been served with the magistrate judge's order.  *See* L. Civ. R. 72.1(c)(1)(A).

   B.  Analysis

   Here, Magistrate Judge Arpert's Order denying Plaintiff's Motion to Amend was filed on February 9, 2015, one week before trial was scheduled to start on February 17, 2015.  (Doc. No. 209).  Pursuant to Local Civil Rule 72.1, the deadline for appealing Judge Arpert's Order was February 23, 2015, in the midst of trial.  However, Plaintiff did not file the present appeal until March 20, 2015, over a month after Judge Arpert's Order was filed and two weeks after the trial's conclusion on March 6, 2015.  (Doc. No. 303).  Plaintiff had previous opportunities to raise objections to Judge Arpert's Order but did not do so.  One day after Judge Arpert's Order was issued, this Court held a hearing in preparation for trial.  (Doc. No. 210).  While evaluating the parties' outstanding motions *in limine*, the Court stated that it was bound by Judge Arpert's Order, and Plaintiff did not object.  Throughout Plaintiff's presentation of his case at trial, he did not voice any intent to appeal.  Indeed, no mention of any appeal was raised until February 26, 2015, after Plaintiff had already rested his case and only in response to the Court's noting that Plaintiff did not appeal Judge Arpert's Order.  (Doc. No. 273; February 26, 2015 afternoon conference).  The next day, February 27, 2015, Plaintiff filed a letter expressing the belief that

the time for filing an appeal of the Order had not yet begun because Judge Arpert had not issued

any opinion setting forth the basis for his ruling.  (Doc. No. 274).  However, Plaintiff still did not

express any intent to appeal or make any arguments why the ruling may have been in error.

After the letter, Plaintiff remained silent about Judge Arpert's Order until he filed his Appeal on

March 20, 2015.  (Doc. No. 303).

      Although Judge Arpert did not file an Opinion until after trial had concluded, Local Civil

Rule 72.1 imposes a 14-day deadline from the day a party has been served with the magistrate

judge's order, not the opinion.[3]  Thus, it appears that Plaintiff's Appeal is untimely.[4]

Nevertheless, in light of the unusual circumstances surrounding Judge Arpert's ruling, the Court

will consider Plaintiff's Appeal.

      Federal Rules of Civil Procedure 15 and 16 govern amendments of pleadings.  See *Prime*

*Ins. Syndicate v. United Risk Mgmt. Servs., Inc.*, No. 03-1050 (SRC), 2006 WL 2085388, at *3–4

(D.N.J. July 25, 2006).  "A motion to amend a pleading that is filed before the deadline for

amendments of pleadings has passed in a Rule 16 Scheduling Order will be governed by Rule

15(a) only."  *Velto v. Reliance Standard Life Ins. Co.*, No. 10-01829 DMC-JAD, 2011 WL

810550, at *2 (D.N.J. Mar. 1, 2011).  However, once the deadline imposed in a Rule 16

---

[3] While the Court acknowledges the difficulty of appealing an order in the absence of an opinion, if Plaintiff genuinely believed the ruling was erroneous, he should have requested an opinion from Judge Arpert or filed a notice of intent to appeal pending the issuance of Judge Arpert's opinion or expressed some objections during the February 10, 2015 hearing, in the week between the hearing and trial, or early on at trial before Plaintiff rested his case to allow the Court to timely address the issue and make any corrections if needed.  Instead, Plaintiff did not raise the issue until it was too late to remedy any alleged error.  Moreover, the arguments Plaintiff raises in this Appeal could have been asserted earlier because they are not based on any new facts or information unavailable to Plaintiff prior to trial.

[4] Plaintiff construes his appeal as an objection to Judge Arpert's March 9, 2015 Opinion and Order rather than to the February 9, 2015 Order.  Because the Court will consider the Appeal, it does not matter which Order is the one being appealed.

Scheduling Order has passed, both Rule 16 and Rule 15 apply to motions to amend. *Id.* at 4; *Dimensional Commc'ns, Inc. v. OZ Optics, Ltd.*, 148 F. App'x 82, 85 (3d Cir. 2005); *Kuchinsky*, 2014 WL 1679760, at *2. Rule 16(b)(4) requires a party to show "good cause" for modifying the Rule 16 scheduling order in order to extend the deadline for amending a pleading. Fed. R. Civ. P. 16(b)(4); *Velto*, 2011 WL 810550, at *4. Good cause turns on "whether the moving party can demonstrate that the scheduling order deadlines could not be reasonably met despite the party's diligence." *Kuchinsky*, 2014 WL 1679760, at *2 (internal citations omitted). Only if the court finds good cause to modify the scheduling order will the court proceed to assess the proposed amended complaint under Rule 15. *Velto*, 2011 WL 810550, at *4.

Under Rule 15(a)(2), leave to amend a pleading is liberally granted unless the court finds "(1) undue delay; (2) undue prejudice to the non-moving party; (3) bad faith or dilatory motive; or (4) futility of amendment." *Velto*, 2011 WL 810550, at *3 (citing *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)). Delay becomes undue when it is unjustified in light of previous opportunities to amend the complaint and "plac[es] an unwarranted burden on the court." *Id.* (citing *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984) and *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993)). Unfair prejudice exists where permitting delay in seeking to amend the complaint creates an unfair disadvantage to the defendant. *Id.* For example, courts consider "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or theories." *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001). Courts in this Circuit have frequently denied amendments sought after discovery has closed or on the eve of trial, due to their prejudicial nature. *See, e.g.*, *Estate of Oliva ex rel. McHugh v. N.J.*, 604 F.3d 788, 803 (3d Cir. 2010); *Valentin v. Phila. Gas Works*, 128 Fed. App'x 284, 287 (3d Cir. 2005); *Keller v. Schering-Plough Corp.*, No. 04-669, 2007 WL 2990714, at *4 (D.N.J. Oct.

9, 2007) (collecting cases); *Omogbehin v. Cino*, 485 F. App'x 606, 612 (3d Cir. 2012).  Lastly, an amendment is futile if it fails to state a claim upon which relief may be granted under Rule 12(b)(6).  *Shane v. Fauver*, 213 F.3d at 115.  In assessing a claim under Rule 12(b)(6), the court must accept as true any well-pleaded facts in the complaint and construe the complaint in the light most favorable to the plaintiff, but may disregard any legal conclusions.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).  Then, the court determines whether the facts alleged are sufficient to demonstrate a "plausible claim for relief."  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  A "plausible claim for relief" means more than a showing of a "mere possibility of misconduct;" it requires well-pleaded facts that would allow a court reasonably to infer "that the defendant is liable for the misconduct alleged."  *Id.*

Here, Plaintiff filed his Motion to Amend on January 29, 2015, nineteen days before trial and two years after the April 1, 2012 deadline for amending pleadings had expired.[5]  Thus, both Rule 16 and Rule 15 apply.  However, it appears that because Plaintiff never sought to modify the Rule 16 Scheduling Order to obtain an extension before or concurrent with the filing of his Motion to Amend, the Motion was briefed and ruled upon only under the more liberal Rule 15 standard.  (Doc. No. 201 at 27).  Regardless, under both Rule 15 and 16 standards, Plaintiff's motion was properly denied due to (1) Plaintiff's lack of good cause for and undue delay in seeking amendment, (2) undue prejudice to Defendant CCS, and (3) the amendment's futility.

---

[5] It appears that after filing his AC on April 20, 2012, Plaintiff never sought to further amend his Complaint until January 29, 2015, as none of the Modified Scheduling Orders issued during the interim period reflect a change to the April 2012 deadline for amendment of pleadings.  (Doc. Nos. 19, 38, 40, 49, 111, 117, 164, 297 at 3).

1.    *Plaintiff's lack of good cause and undue delay*

Plaintiff's operative pleading from April 20, 2012 through discovery, the final pre-trial conference in December 2014, and the FPO of January 7, 2015 was the AC.[6]  Although the AC explicitly alleged constitutional violations and § 1983 claims against the Monmouth County Defendants, the three counts asserted against CCS included no mention of any constitutional violation, § 1983, or any of the elements of a medical indifference claim under the Eighth or Fourteenth Amendments.  Instead, the allegations against CCS consisted of claims that CCS "did not use reasonable or proper skill," "negligently and carelessly treated," "failed to perform the treatment in the accepted manner," and "failed to exercise the knowledge, skill and diligence which as physicians they should have possessed and exercised," such that the decedent's injuries "were caused in part by the negligence of the defendant [CCS]."  (Doc. No. 11 at 12-14).  As a result, on two separate instances months before trial, the Court explicitly stated in its September 25, 2014 and November 14, 2014 Orders that the AC only asserted a medical negligence claim against CCS and not any § 1983 claims.[7]  (Doc. Nos. 160 at 3, 171 at 1-2).  However, Plaintiff did not seek to further amend the AC until January 29, 2015.[8]  (Doc. No. 201).

---

[6] Plaintiff argues that the FPO included a § 1983 claim against CCS and that the FPO superseded the AC.  However, this argument is unpersuasive, for reasons discussed later in this Opinion.
[7] While there is a single reference in the AC to CCS "carelessly and recklessly fail[ing] to provide reasonable and proper medical care" and some mention of a delay in care, such stray remarks are insufficient to provide the requisite notice for a § 1983 claim under the familiar *Iqbal/Twombly* pleading standards, especially where Plaintiff has articulated no specific supporting facts in the AC and where the AC predominantly uses the language of negligence and a failure to use "reasonable and proper skill" in its allegations against CCS.  (Doc. No. 11 at 13).
[8] The Court also notes that Plaintiff failed to properly file his cross-motion to amend in accordance with New Jersey's Local Civil Rules, as Plaintiff failed to include a complete copy of his proposed amended complaint.  *See* L. Civ. R. 7.1(f); Doc. No. 201.  Instead, Judge Arpert reached out to Plaintiff for a copy, and Judge Arpert passed it along to this Court on appeal.  Plaintiff's proposed amended complaint is attached as an exhibit to this Opinion.

In denying Plaintiff's Motion to Amend, Judge Arpert highlighted Plaintiff's failure to provide any justification for its delay in seeking to amend and the unwarranted burden an amendment would impose on the Court, given that it was filed at the eleventh hour—only nineteen days before trial and after the final pretrial conference and order had been entered. (Doc. No. 297 at 4-5).  Judge Arpert further noted that Plaintiff had ample opportunity to seek an amendment several months earlier, but declined to do so, choosing instead to wait until the eve of trial.  (*Id*. at 3-4).  Plaintiff was on notice by Court Orders on two separate occasions— September 25, 2014 and November 14, 2014—that the AC did not assert any § 1983 claims against CCS, but Plaintiff did not timely move to further amend the AC upon receipt of those rulings.  (*Id*.).  Thus, Judge Arpert found undue delay and denied Plaintiff's Motion to Amend.

In his appeal, Plaintiff argues that Judge Arpert's ruling is erroneous in part because "the order failed to state exactly how the Court or CCS were burdened."  This argument is easily dispelled by an examination of the record.  At the time Plaintiff's cross-motion to amend was filed, the Court was assessing a total of sixteen motions *in limine* filed by both parties, a motion for summary judgment, and also reviewing the record and researching the relevant law in preparation for trial.[9]  (Doc. Nos. 179–183, 193–94).  Indeed, in the weeks before trial the parties submitted to the Court unusually voluminous filings numbering in the hundreds, if not thousands

---

[9] The burden of trial in this case was considerable given the large number of Defendants and Plaintiff's last minute shuffling and general unpreparedness.  Plaintiff tried to assert not one, but two new claims at the eleventh hour: a § 1983 claim against CCS and a survival claim.  (Doc. No. 193, 180, 194; February 26, 2015 afternoon conference).  And there were issues with Plaintiff's witnesses that surfaced just before trial.  (Doc. Nos. 179, 218).  There was also a dispute about Plaintiff changing his theory of liability for the medical malpractice claim to a common knowledge negligence theory at the eleventh hour.  (February 26, 2015 and March 3, 2015 trial conferences).  In general, Plaintiff seemed not fully prepared for trial, which added to the Court's burden.  For example, Plaintiff failed to submit opposition to all the relevant motions *in limine* and failed to submit proposed jury instructions and a verdict sheet.

of pages.  Permitting a new claim to be asserted at that point would have further delayed trial for

a case that was already three and a half years old because it would have entailed additional

discovery and motion practice by the parties, as the new claim involves elements distinct from

any of the other causes of action asserted.  Thus, the burden on the Court attributable to

Plaintiff's proposed amendment would have been significant and furnishes a basis for "undue

delay."  *See Estate of Oliva*, 604 F.3d at 803 (delay is undue where it imposes an "unwarranted

burden on the court"); *Omogbehin*, 485 F. App'x 606 at 612 (affirming a district court's denial of

plaintiff's last minute motion to amend and noting the burden on the court).

Courts have also found a lack of "good cause" or an "undue delay" justifying denial of

motions to amend where the plaintiff did not act diligently and failed to take advantage of

previous opportunities to amend.  *See, e.g.*, *Lorenz*, 1 F.3d at 1404; *Kuchinsky*, 2014 WL

1670760, at *2; *Omogbehin*, 485 F. App'x 606 at 612; *Valentin*, 128 F. App'x at 287.  Here,

Plaintiff waited four months—from September 25, 2014 to January 29, 2015—before seeking to

further amend the AC, ultimately choosing nineteen days before trial as the time to seek

amendment.  Even now on appeal, Plaintiff has failed to provide any explanation for his delay.[10]

Given Plaintiff's lack of justification for his eleventh hour motion to amend and the burden such

amendment would impose on the Court, Judge Arpert justifiably found undue delay warranting

denial of Plaintiff's Motion.

---

[10] The closest Plaintiff comes to providing an explanation is that no amendment was needed
because the Court's previous September 25, 2014 Order was erroneous in light of the Supreme
Court's ruling in *Johnson v. City of Shelby*, 135 S. Ct. 346 (2014).  However, as explained later
in this Opinion, *Johnson* is distinguishable.  But even if it were compelling, Plaintiff still offers
no explanation for why it failed to seek amendment during the month and a half between the
Court's September 25, 2014 Order and the Supreme Court's issuance of *Johnson* on November
10, 2014.  Nor does Plaintiff offer any explanation for why it failed to timely seek
reconsideration of the Order after *Johnson* was issued.

2.      *Unfair prejudice to CCS*

In addition to undue delay, Judge Arpert also mentioned, but did not detail, the burden on Defendant CCS if a last minute amendment were permitted.  (Doc. No. 297 at 5).  Plaintiff argues that the amendment did not prejudice CCS because the AC adequately put CCS on notice of the § 1983 medical indifference claim and because Plaintiff had "consistently argued" such a claim throughout pretrial.  In addition, Plaintiff argues that any prejudice is irrelevant since Plaintiff included in the FPO his § 1983 claim against CCS, and final pretrial orders supersede the pleadings without any additional amendment.  The Court will first address prejudice to CCS caused by Plaintiff's late amendment and then address each of Plaintiff's arguments in turn.

Adding a § 1983 claim of deliberate indifference to medical needs nineteen days before trial would have prejudiced CCS because such a claim would have required additional discovery, cost, and preparation and would have conferred an unfair advantage to Plaintiff, given his late assertion of the claim.  *See, e.g.*, *Cureton*, 252 F.3d at 273; *Velto*, 2011 WL 810550, at *3.  The § 1983 claim Plaintiff sought to bring against CCS contains elements that are unique from the other claims asserted.  Specifically, a medical indifference claim would inject into the case— after discovery had concluded and experts had been deposed—the following (non-exhaustive) new issues: whether CCS was a state actor, whether CCS acted with deliberate indifference, and whether any of CCS's policies or customs (or lack thereof) caused any constitutional injury to Plaintiff.  CCS would have incurred additional costs in order to (1) research and prepare a defense on these issues, (2) re-depose its expert and further supplement expert reports as to the new claim, and (3) file any pertinent new motions.  Moreover, a medical malpractice claim centers on a more specific standard of care; thus in preparing its defense for such a claim throughout discovery, CCS likely would have narrowed its focus and thereby potentially limited

possible defense strategies at trial with respect to a § 1983 claim.  Given Plaintiff's late assertion

of this claim just weeks before trial, after Plaintiff had already been on notice for four months of

the AC's limitations, the unusual amount of last minute shuffling in the case,[11] and the additional

discovery needed to fully defend the claim, it is clear that Plaintiff's amendment would prejudice

CCS and that therefore amendment was properly denied.

Plaintiff argues that the AC was sufficient to put CCS on notice of a § 1983 deliberate

indifference claim, citing *Johnson v. City of Shelby* for the proposition that a complaint need not

"set out a legal theory for the plaintiff's claim for relief." 135 S. Ct. 346, 346–47 (2014).  In

*Johnson*, the plaintiffs were police officers who were allegedly "fired by the city's board of

aldermen, not for deficient performance, but because they brought to light criminal activities of

one of the aldermen." *Id*. at 346.  In their complaint, the officers explicitly asserted a violation of

their Fourteenth Amendment due process rights and described the relevant facts supporting relief

but failed to explicitly invoke 42 U.S.C. § 1983.  The district court granted summary judgment

for the defendants, and the Fifth Circuit affirmed, because individuals claiming deprivation of

property without due process may not sue directly under the Fourteenth Amendment, but instead

must seek redress under 42 U.S.C § 1983.  *See, e.g.*, *Berger v. City of New Orleans*, 273 F.3d

1095 (5th Cir. 2001) (cited by the *Johnson* trial court in its decision).  The Supreme Court

reversed, explaining that as long as a plaintiff has "plead[ed] facts sufficient to show that her

claim has substantive plausibility," she is "required to do no more to stave off threshold

dismissal for want of an adequate statement of [his] claim."  Specifically, the Court stated that a

plaintiff need not "invoke § 1983 expressly in order to state a claim."  *Id*. at 347.

---

[11] *See supra* note 9 and accompanying text.

13

However, *Johnson* is distinguishable from the matter at hand.  The *Johnson* plaintiffs

clearly laid out the facts supporting their due process claim and explicitly asserted a Fourteenth

Amendment violation; thus, requiring an additional explicit invocation of § 1983 seems to be a

mere technicality.[12]  Here however, Plaintiff's AC fails to include reference to a single element

of or any specific facts to support a § 1983 claim against CCS.  Besides the lack of explicit

reference to § 1983,[13] it contains no assertion that CCS, a private company, is a state actor; no

claim that CCS acted with deliberate indifference to the deceased's medical needs; no allegation

that CCS violated the Constitution or other federal laws; and not even any facts identifying

specific CCS conduct or lack thereof that could support a § 1983 deliberate indifference claim.

Instead, the counts asserted against CCS use the language of medical malpractice, citing a

negligence standard, a failure "to use reasonable and proper skill and care," a failure "to perform

the treatment in the accepted manner."[14]  (Doc. No. 11 at 12-14).  Thus, asking the Court here to

find a § 1983 claim against CCS buried in the AC is not insistence on a mere technicality as in

---

[12] Indeed even a cursory comparison of Plaintiff's AC and the *Johnson* complaint reveals the additional care that the *Johnson* plaintiffs took in drafting their pleading: there is uniform font, clear language, and no misspellings.  More importantly, unlike the AC, the *Johnson* complaint contains specific facts surrounding the discharge and no catch-all or generic boilerplate legal conclusions.

[13] This lack of reference to § 1983 in the claims against CCS is all the more glaring given the fact that Plaintiff liberally invoked § 1983 and constitutional violations in its counts against the Monmouth County Defendants.  Although Plaintiff claims that the counts against CCS incorporated the previous sections by reference, the § 1983 claims against Monmouth County were based on excessive force and failure to train and supervise, rather than any deliberate indifference to medical needs.  Under the familiar *Iqbal* pleading standard, a complaint must plead specific facts sufficient to establish a "plausible claim for relief."  *See Fowler*, 578 F.3d at 210–11 (quoting *Iqbal*, 556 U.S. at 679).

[14] While there is a single reference in the AC to CCS "carelessly and recklessly fail[ing] to provide reasonable and proper medical care" and some mention of a delay in care, such stray remarks are insufficient to provide the requisite notice for a § 1983 claim under the familiar *Iqbal/Twombly* pleading standards, especially where Plaintiff has articulated no specific supporting facts in the AC and where the AC uses predominantly the language of negligence and a failure to use "reasonable and proper skill" in its allegations against CCS.  (Doc. No. 11 at 13).

*Johnson*, but rather a request to transform Plaintiff's claim from one of cause of action (medical malpractice) into another one (deliberate indifference to medical needs) that involves different elements and standards.  Such a transformation would deprive CCS of fair notice and contravene the *Iqbal/Twombly* standards, none of which are altered by *Johnson*. *See Johnson*, 135 S. Ct. at 347 (stating that the *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) decisions "are not in point, for they concern the factual allegations a complaint must contain to survive a motion to dismiss").  Furthermore, in *Johnson*, the plaintiffs had no court provided notice of the deficiency in their complaint before summary judgment was granted to the defendants.  Here, however, Plaintiff received two Court orders that explicitly stated the limitations of the AC, and Plaintiff chose to wait for four months before taking appropriate action, at which point Judge Arpert determined that it was too late.  Thus *Johnson* is distinguishable and offers no protection for Plaintiff's AC.[15]

Plaintiff also claims that CCS was not prejudiced because Plaintiff had "consistently argued this issue [of a § 1983 medical indifference claim] since November 2013."  (Doc. No. 303 at 2).  But pleadings may not be amended through a party's briefs.  *See, e.g.*, *Ziemba v. Incipio Technologies, Inc.*, No. 13-5590 (JLL), 2014 WL 4637006 at *3; *Swift v. Pandey*, No. 13-649 (JLL), 2013 WL 6022093, at *2 (D.N.J. Nov. 13, 2013).  More importantly, even if CCS had some earlier warning that Plaintiff intended to assert a § 1983 claim against it, these notions were quashed when Plaintiff failed to timely seek amendment after the Court's September 25, 2014 and November 14, 2015 Orders explicitly stated otherwise.  Therefore, in light of all the

---

[15] The fact that *Johnson* does not apply here is also a reason why Plaintiff's Motion for Reconsideration, which Judge Arpert's Order also denied for untimeliness, is appropriate.

above, Plaintiff's arguments that CCS was not prejudiced by a last minute attempt to add a

§ 1983 medical indifference claim are unpersuasive.

             i.      Final Pretrial Order

      Finally, Plaintiff claims that regardless of prejudice, Judge Arpert's ruling is erroneous

because (1) Plaintiff included as a contention in the FPO that "defendant CCS acted with

reckless disregard to Mr. Bornstein's medical needs in violation of the Eighth and Fourteenth

Amendments of the Constitution and 42 USC section 1983," and (2) final pretrial orders

supersede the pleadings, thus rendering a formal motion to amend unnecessary.  (Doc. No. 177 at

10).  It is true that "a final pretrial order when entered limits the issues for trial and in substance

takes the place of pleadings covered by the pretrial order."  *Basista v. Weir*, 340 F.2d 74, 85 (3d

Cir. 1965); *see also Rockwell Int'l Corp. v. U.S.*, 549 U.S. 457, 474 (2007); Fed. R. Civ. P. 16(d),

(e).  Thus, "claims, issues, defenses, or theories of damages not included in the pretrial order are

waived even if they appeared in the complaint and, conversely the inclusion of a claim in the

pretrial order is deemed to amend any previous pleadings which did not include that claim."

*Wilson v. Muckala*, 303 F.3d 1207, 1216 (10th Cir. 2002).  However, in practice, the vast

majority of cases applying this rule have used it to find waiver, rather than to permit a newly

asserted claim at trial.  *See, e.g.*, *DiNenno v. Lucky Fin Water Sports, LLC*, 837 F. Supp. 2d, 419,

424 (D.N.J. 2011); *Mayer v. Gottheiner*, 382 F. Supp. 2d 635, 638 (D.N.J. 2005); *Cataldo v.*

*Moses*, No. 02-2588 (FSH), 2005 WL 705359, at *1 n. 1 (D.N.J. Mar. 29, 2005), *Logan v.*

*Potter*, No. 06-297, 2007 WL 1652268, at *3 (D.N.J. June 6, 2007); *Eagan v. Gory*, No. 07-823

(JS), 2009 WL 483851, at *2 (D.N.J. Feb. 24, 2009), *aff'd*, 374 F. App'x 335 (3d Cir. 2010).

      Courts "do not normally expect to see claims or defenses not contained in the pleadings

appearing for the first time in the pretrial order" because "[s]uch a practice deprives one's

16

adversary of fair notice, possibly discovery, and the opportunity for motion practice, and is subject to abuse by those who employ a sporting theory of justice, and the laudable purpose of the Rule is to avoid surprise, not foment it." *In re AT&T Sec. Litig*. No. 00-5364 GEB, 2004 WL 6392120, at *5 (D.N.J. Apr. 7, 2004) (quoting *Wilson*, 303 F.3d at 1215–16) (internal quotation marks and brackets omitted).  Thus,

> Should a new claim or defense appear for the first time in the pretrial order, it is incumbent upon opposing counsel to meticulously examine the order, taking exception, if necessary, to the additions, and recording their objection in the pretrial order. Meanwhile, the party seeking to add a claim or defense should do so with specificity and clarity so as to minimize the ill effects of that practice.  Specificity and clarity provide the trial court with a fair opportunity to consider whether to approve or deny what is obviously an attempt to amend the pleadings at a rather late date.

*Id*.  (quoting *Wilson*, 303 F.3d at 1216).  Here, it appears that Plaintiff has not followed these guidelines.  While Plaintiff listed his § 1983 medical indifference claim as one of his contentions in the FPO, he did not do so "with specificity and clarity" because Plaintiff's alleged facts in the FPO fail to explicitly identify or explain any alleged CCS policy or practice or lack thereof that caused a violation of Plaintiff's constitutional rights.[16]  (Doc. No. 177 at 3-4).  And although CCS did record in the FPO an objection to Plaintiff's assertion of the § 1983 claim, CCS did not further raise any such objection via motion.  (Doc. No. 177 at 12).  Instead, CCS pursued motions *in limine* only on the issues of whether CCS is a state actor and whether the § 1983 claim should be dismissed for failure to timely serve a Tort Claim Notice required under N.J.S.A. 59:8-1 *et seq*.[17]  (Doc. No. 177 at 90; Doc. No. 180 at 21-22).  Consequently, the issue of whether Plaintiff's § 1983 medical indifference claim was validly asserted via the final pretrial

---

[16] Nor did Plaintiff identify any acts of any alleged CCS policymakers whose conduct may be the basis for CCS's liability.  A further discussion of the elements of a § 1983 deliberate indifference claim is provided in the next section of this Opinion.

[17] However, § 1983 claims are exempt from the notice provision of New Jersey's Tort Claims Act, N.J.S.A. 59:8–8.  *See Schneider v. Simonini*, 163 N.J. 336, 372 (2000).

order was not clearly presented to Magistrate Judge Arpert or to this Court before trial. *Cf. In re AT&T Sec. Litig.*, 2004 WL 6392120, at *1, 7 (stating that the parties should provide "the trial court with a fair opportunity to consider whether to approve or deny what is obviously an attempt to amend the pleadings at a rather late date") (quoting *Wilson*, 303 F.3d at 1216).

In the few instances where a party has sought to inject some new element into the case by way of the final pretrial order, courts have not blindly or automatically applied the rule that final pretrial orders supersede the pleadings. Instead, courts have carefully assessed the prejudice to the opposing party and, where prejudice exists, the newly asserted claim or defense has been rejected despite its inclusion in the final pretrial order. *See Cont'l Ins. Co. v. Beecham, Inc.*, 836 F. Supp. 1027, 1045, n. 10 (D.N.J. 1993) (finding waiver of a defense that was raised for the first time "after the close of discovery and prior to trial," and stating that the defendant's "mention of this defense in the Final Pretrial Order does not vitiate the prejudice which would inure to [the plaintiff's] detriment if this defense were permitted given that the notice given in the Final Pretrial Order came only after the close of discovery"); *In re AT&T Sec. Litig.*, 2004 WL 6392120, at *5–7 (prohibiting plaintiff from asserting new claims based on facts that were included in the final pretrial order because they are "untimely and would cause undue delay" and would prejudice defendants "at this late stage in the litigation process," depriving them of "fair notice, possibly discovery, and the opportunity for motion practice"). After all, "departure from or adherence to the pretrial order is a matter peculiarly within the discretion of the trial judge." *Beissel v. Pittsburgh & Lake Erie R.R. Co.*, 801 F.2d 143, 150 (3d Cir. 1986); *see also Johnson v. City of Camden Police Dep't*, No. 96-5840 JBS, 1998 WL 975422, at *6 (D.N.J. Dec. 31, 1998) *aff'd*, 208 F.3d 206 (3d Cir. 2000).

Under the circumstances here, the Court is not persuaded that the FPO furnishes a basis for disturbing Judge Apert's ruling. The rare cases in which courts have given effect to allegations raised for the first time in the final pretrial order are distinguishable as they involved different circumstances: the final pretrial order included only a new element, not a new cause of action; no prejudice existed; or there was no impending trial date thus, the new claim was assessed in a motion for summary judgment rather than on the eve of trial. *See McGovern v. City of Jersey City*, No. 98-5186 JLL, 2008 WL 58820 (D.N.J. Jan. 2, 2008) (plaintiff included in the final pretrial order new factual allegations to further support its previously asserted First Amendment retaliation claim, and the court considered these new allegations on the merits in defendant's motion for summary judgment; there was no trial date set at the time); *Hoagburg v. Harrah's Marina Hotel Casino*, 585 F. Supp. 1167, 1175 (D.N.J. 1984) (plaintiff asserted psychological damages in the final pretrial order even though the complaint had not specified this type of injury, and the court granted summary judgment to defendant on this claim without the need for any additional discovery). In contrast, here Plaintiff sought to add at the eleventh hour not merely a new type of remedy or new facts to support a previously asserted theory of liability but rather an entirely new cause of action raising a new theory of liability, just weeks before trial was set to begin. The rushed timing of events post-FPO heightened the prejudice to CCS, especially in light of Plaintiff's prior notice of the AC's limitations and Plaintiff's undue delay in seeking amendment. When the FPO was entered on January 7, 2015, trial was scheduled to start on February 2, 2015. Sixteen motions *in limine* were filed as of January 20, 2015. On January 28, 2015, only five days before trial was scheduled to begin, trial was rescheduled for February 17, 2015. The next day, Plaintiff filed his Motion to Amend. At this point, to accommodate Plaintiff's new § 1983 medical indifference claim, trial would have had to

be adjourned on an already delayed and extended three and a half year case or CCS would have had to—in less than one month's time and in addition to preparing its defense on the existing medical malpractice claim—rush to take additional expert and witness depositions relating to the new claim and formulate its new defense strategy.  Under these circumstances, it was not unreasonable for Judge Arpert to depart from the FPO and deny Plaintiff's last minute attempt to assert a new § 1983 claim against CCS.

In addition, Plaintiff has waived any argument that the FPO superseded the AC under the invited error doctrine.  This doctrine "refers to an error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the erroneous ruling."  *Lesende v. Borrero*, 752 F.3d 324, 337 (3d Cir. 2014) (internal citations and quotation marks omitted).  Here, despite having asserted the claim in the FPO, Plaintiff took the further step of filing a motion to amend the AC, suggesting that Plaintiff himself did not think the FPO superseded the pleadings.  Moreover, in his brief supporting his motion to amend, nowhere did Plaintiff mention that the § 1983 claim had been included in the FPO and that the FPO superseded the AC.  Nor did Plaintiff raise this argument or otherwise appeal Judge Arpert's order (1) at the hearing conducted by this Court one day after Judge Arpert issued his Order denying Plaintiff's motion to amend, (2) in the week before the hearing and trial, or (3) anytime at trial.[18]  By filing a motion to amend after the FPO had been entered and failing to mention the FPO, Plaintiff effectively invited Judge Arpert to commit an error.  Then instead of timely raising the issue, Plaintiff chose to quietly wait until after it was too late to redress.  Under these

---

[18] The only time Judge Arpert's Order arose was when the Court raised the issue after Plaintiff had rested its case.  Even then however, Plaintiff merely stated the position that the time for filing an appeal had not yet started, but voiced no intent to appeal and no arguments for appeal. (Doc. No. 274; *see also* February 10, 2015 hearing; February 27, 2015 conference at 1:05-1:10 pm).

circumstances, the Court finds that Plaintiff waived its argument based on the FPO according to

the invited error doctrine.  *See, Lesende*, 752 F.3d at 337–38; *Sands v. Wagner*, 314 F. App'x

506, 508–09 (3d Cir. 2009); *U.S. v. Console*, 13 F.3d 641, 660 (3d Cir. 1993).

    *3.*        *Futility of Plaintiff's proposed amendment*

Lastly, in addition to undue delay, prejudice, and waiver, Plaintiff's proposed amendment

was also futile, as assessed under the Rule 12(b)(6) standard.  *See Shane v. Fauver*, 213 F.3d at

115 (proposed amendments are futile it they "fail to state a claim upon which relief could be

granted," applying "the same standard of legal sufficiency as applies under Rule 12(b)(6)");

*Keller*, 2007 WL 2990714 at *3 ("in determining a motion to amend a complaint, the Court looks

only at the pleadings").  To assert a claim under 42 U.S.C. § 1983, the plaintiff must show that a

person acting under color of state law violated a right protected by the Constitution or laws of the

United States.  *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 580–81 (3d Cir. 2003).

The Eighth Amendment protects the right of a convicted prisoner to receive adequate medical

care.  *See Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976).  But where, as here, the plaintiff is a

pretrial detainee, the Eighth Amendment does not apply; instead, the plaintiff must plead his

§ 1983 claim under the Due Process Clause of the Fourteenth Amendment.  *Natale*, 318 F.3d at

581 (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).  However, because

the protections afforded to pretrial detainees under the Fourteenth Amendment are "at least as

great as the Eighth Amendment protections available to a convicted prisoner," the Third Circuit

has applied the Eighth Amendment *Estelle* standard to pretrial detainees asserting claims of

inadequate medical care.  *Id*.  To establish a violation of an inmate's constitutional right to

adequate medical care, "evidence must show (i) a serious medical need, and (ii) acts or

omissions by prison officials that indicate deliberate indifference to that need." *Natale*, 318 F.3d at 582 (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

In addition, there is no respondeat superior liability under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, for a municipality to be liable, a plaintiff must demonstrate that the constitutional violation was caused by the municipality's policy or custom. *See Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014). "Liability is imposed when the policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the moving force behind the constitutional tort of one of its employees." *Id*. (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991)). A policy exists "when a decisionmaker possess[es] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." *Natale*, 318 F.3d at 584. "A custom is an act that has not been formally approved by an appropriate decisionmaker, but that is so widespread as to have the force of law." *Id*. (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)).

The Third Circuit has identified three situations "where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under Section 1983." *Id.* First, where a "generally applicable statement of policy" is promulgated and "the subsequent act complained of is simply an implementation of that policy." *Id.* Second, where federal law has been violated by a policymaker's conduct despite the absence of any announced policy. *Id.* And third, where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have

been deliberately indifferent to the need." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

Here, Plaintiff sued CCS only without suing any individual CCS employees.  Thus, to the extent that CCS is a state actor subject to suit under § 1983, it can only be liable for constitutional violations resulting from an official custom or policy.  Plaintiff's proposed amended complaint recites only bare, conclusory, boilerplate terms of a § 1983 inadequate medical care violation, without offering any specific supporting factual allegations, even though Plaintiff had the benefit of full discovery.[19]  Plaintiff has not alleged any widespread custom or practice by CCS, and generally a policy will not be inferred "from the isolated misconduct of a single, low-level officer." *Bartholomew v. Fischl*, 782 F.3d 1148, 1154 (3d Cir. 1986) (internal citations omitted).  Plaintiff also cited no actions or omissions by any individuals that could be deemed policymakers of CCS.  Nor has Plaintiff identified any deficiencies in or absence of CCS policies that contributed in any way to, let alone provided the "moving force" behind, any constitutional deprivation suffered by the deceased.  The proposed amended complaint articulates no facts or conduct by CCS employees to support any inference of deliberate indifference by CCS.  *See Natale*, 318 F.3d at 582 (stating that deliberate indifference is a "subjective standard of liability consistent with recklessness as that term is defined in criminal law," one that "requires proof that the official knows of and disregards an excessive risk to inmate health or safety;" the court then identified two situations where deliberate indifference has been found: 1) where there was "objective evidence" of an inmate's serious need for medical care and prison officials ignored that evidence; and 2) where "necessary medical treatment is

---

[19] Indeed, Plaintiff's proposed amended complaint fails to even clearly distinguish between its medical negligence claim and its § 1983 claim even though these causes of action have different elements and standards for culpability.

delayed for non-medical reasons"); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (stating that "claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute deliberate indifference," and that deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment").

Therefore, the Court finds undue delay, prejudice, and futility with respect to Plaintiff's Motion to Amend and no grounds for disturbing Judge Arpert's ruling.

CONCLUSION

For the reasons above, the Court will affirm Magistrate Judge Arpert's February 9, 2015 Order and March 9, 2015 Memorandum Opinion and Order, both of which denied Plaintiff's Motion to Amend.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.